## THE LAKE ERIE AND WESTERN RAILWAY COMPANY v. JUDAY.

### [No. 2,158. Filed March 9, 1898.]

REMOVAL OF CAUSES.— *Amount in Controversy. — Jurisdiction.* — Under the provision of the Federal statute that a cause may be removed from a state court to the Federal court where the controversy is between citizens of different states and the amount involved exceeds $2,000.00, the court in determining whether a cause is removable under such statute will look both to the complaint and petition for removal, and if the amount demanded in the complaint is less than $2,000.00 the cause is not removable, notwithstanding it is alleged in the body of the complaint that plaintiff's damage for which he seeks relief is $10,000.00. *pp. 442, 443.*

PLEA IN ABATEMENT.—*Amendment of Complaint.*—A plea in abatement alleging that after filing a complaint, and before the return day, plaintiff obtained possession of the complaint and changed the amount of the prayer therein from $10,000.00 to $1,999.99, and that the alteration was made for the express purpose of preventing the removal of the cause to the Federal court, is properly overruled, as plaintiff may amend his complaint without leave of court before answer. *pp. 443, 444.*

The Lake Erie and Western Railway Company *v.* Juday.

NEGLIGENCE.—*Railroads.—Pleading.*—To constitute negligence on the part of a railway company in the operation of its road, facts must be stated which affirmatively show that the accident relied upon resulted from the want of some precaution which the railway company ought to have taken. *pp. 447, 448.*

SAME.— *Complaint.— Sufficiency.— Railroads.—Horse Frightened at Hand-car.*—A complaint against a railway company for damages for personal injuries which alleges that defendant's servants were running a hand-car on defendant's track, approaching a highway at great speed, and that as they approached the highway they saw plaintiff in his buggy near the crossing, his horse badly frightened and him and his companions in imminent danger; and with full knowledge of such facts continued to run the hand-car nearer to plaintiff, and made no effort to stop the car or check its speed, and that if they had done so plaintiff could have managed his horse and averted the injuries complained of, charges actionable negligence on the part of defendant. *pp. 450-452.*

PRACTICE.—*Motion to Strike Out Part of Pleading.—Harmless Error.*—It is harmless error to overrule a motion to strike out parts of a pleading. *pp. 452, 453.*

EVIDENCE.—*Sufficiency of to Sustain Verdict.*—The appellate tribunal will not disturb a verdict of a jury upon the mere weight of the evidence, but where there is no evidence to support the verdict upon a material question in issue, the judgment will be reversed. *pp. 453-457.*

SAME.—*Opinion of Witness.*—In the trial of a cause against a railroad company for damages to plaintiff caused by his horse becoming frightened at a hand-car on defendant's track, it was improper to ask plaintiff as a witness whether he could have turned his horse and thus averted the injury if the highway had not been obstructed with cross-ties, and whether he could have managed and controlled the horse had defendant stopped the hand-car, as such questions called for the opinion of the witness. *pp. 457-464.*

From the Madison Circuit Court.    *Reversed.*

*John B. Cockrum, Chipman, Keltner & Hendee* and *W. E. Hackedorn,* for appellant.

*Bagot & Bagot* and *D. H. Fernandes,* for appellee.

WILEY, C. J.—Appellee sued appellant for injuries alleged to have been received by his horse running away, and throwing him out of his buggy, in which he was riding. The negligence charged against the appellant was that appellee's horse became frightened

near a crossing of a highway and appellant's right of way and track by the approach of a hand-car propelled by appellant's agents and servants, and the accident complained of resulted because of the negligence and carelessness of appellant's servants and agents in not stopping the hand-car upon perceiving that appellee's horse was frightened, when they had full knowledge of the frightened condition of the horse, and the cause thereof.   The complaint avers: That appellee was traveling on a public highway, known as the "Tipton Pike," which highway ran east and west, and crossed and intersected with appellants right of way and track at an acute angle.   He was driving eastward, in a single buggy, to which was attached a horse, well broken and ordinarily gentle, and that he was accompanied by his daughter and one other person; that there was an orchard in full leaf on the north side of said highway and southeast of the railroad, in close proximity to the highway, which so obstructed the view as to prevent a person from seeing a hand-car northwest of the crossing until reaching a point within about 80 to 100 feet distant from the crossing.   The complaint then avers, that: "While this plaintiff was so traveling on said highway, and while approaching said crossing, and carefully watching and listening for approaching trains or other objects upon said railroad that might endanger his safety, when he reached said point in said highway as aforesaid, the distance of about 80 to 100 feet from said crossing, the defendant, by its agents and servants, was running a hand-car upon said railroad at a point northwest of said crossing running in the direction of said crossing at a point about 100 feet to 150 feet northwest of said crossing, and running with great speed.   That plaintiff had approached said point with great care as aforesaid,   *   *   *   and did not see

said car until he had reached said point, nor had he any notice or knowledge that said car was running upon said track, or approaching said crossing, until he reached said point, nor could he have obtained such notice or knowledge by the use of ordinary care, nor could he see said car until he and said car had reached the points respectively aforesaid." The complaint then avers that at that time, and for a long time prior thereto, appellant carelessly and negligently, placed and maintained large piles of cross-ties upon said highway, near said crossing on the east side thereof, beginning about 40 feet from the railroad track, and extending eastward along the side of said highway a distance of about 75 to 100 feet; that said cross-ties occupied a considerable part of the width of said highway, and greatly obstructed and encroached upon the free use thereof by travelers using the same; that on the opposite side of said highway there was a ditch about three feet deep; that the only available space for travel upon said highway at said point, was between said piles of cross-ties and said ditch, being a space of only about 16 feet in width.   We quote now literally that part of the complaint charging negligence on the part of the appellant:  "That while the plaintiff was so driving as aforesaid, and after reaching the part and portion thereof so obstructed as aforesaid, and while his said horse and vehicle were so passing along and upon said narrow portion of said highway between said ties and said ditch, the said hand-car, run and operated by the defendant, came to a point where the same could be seen from the highway; that said car was operated by a number of defendant's servants and agents, who were carrying a number of shovels and other tools used in the performance of their duties.  *  *  *  which shovels were bright and glistening, and, together with said

hand-car and the manner of propelling the same, together with its great speed and velocity, was calculated to frighten a horse of ordinary gentleness; * * * that at the instant he saw said hand-car, his horse also saw the same, and became frightened at the apperance and approach thereof; that by reason of the obstruction of said highway as aforesaid, * * * the plaintiff was unable to turn back or retreat from said place; that the defendant, by its agents and servants, was running said hand-car in the direction of said crossing, and rapidly approaching and coming near said horse as aforesaid, and the plaintiff being unable to hold, control, or manage his said horse on account of his fright, so caused as aforesaid, although using all his efforts and power to control him, and being unable to turn and retreat for the reason aforesaid, said horse plunged forwards, and ran forwards, and away on and over said track, on account and by reason of the facts herein, and hereinbefore and hereinafter stated." The complaint then avers that defendant's servants saw said horse when it first became scared, and knew the cause of his said fright in ample time to have stopped said car, but that with full knowledge of all the facts, carelessly, negligently, and unlawfully failed, refused, and neglected so to stop the car or check the speed thereof, though signaled and requested so to do, and then and there carelessly and negligently, with full knowledge of the facts aforesaid, and with full knowledge and notice that said horse was frightened and unmanageable as aforesaid, and that he was so frightened at the appearance of said car, and that said car could have been stopped and checked, and the said horse quieted, did negligently and carelessly run said car with great speed towards said crossing in the direction of said horse, and in close proximity

to him, thus greatly increasing his fright, which rendered it impossible for appellee to hold, manage, or control him, and he plunged forward, and ran away, in spite of appellee's best efforts, and upset and overturned his buggy throwing him to the ground, to his injury, etc.  The complaint further avers that, if appellant's servants had stopped said car as soon as they could have done so with reasonable effort after seeing the frightened condition of the horse,  appellee could have controlled and quieted him, and thus have prevented and avoided the injuries of which he complained.  The complaint concludes with an averment that the injuries he received were without any fault or carelessness on his part.

Upon appearing to the action, appellant filed a petition and bond for the removal of the cause to the United States Circuit Court, which petition the court overruled.  Appellant then filed a plea in abatement, to which a demurrer was sustained.  Appellant demurred to the complaint for want of sufficient facts, which demurrer was overruled.  Appellant also moved in writing to strike out parts of the complaint, but this motion was also overruled.  An answer in general denial was filed, trial by jury, special verdict, and judgment thereon for appellee.  Appellant moved for judgment on the special verdict in its favor, which motion the court overruled.  Appellant's motion for a new trial was also unavailing.

Error is assigned as follows:  (1)  The complaint does not state facts sufficient to constitute a cause of action.  (2)  The court erred in overruling the appellant's petition for removal to the United States Circuit Court.  (3)  The court erred in sustaining appellee's demurrer to appellant's plea in abatement. (4)  The court erred in overruling appellant's motion to strike out parts of the complaint.  (5)  The court

erred in overruling the appellant's motion for judg-ment in its favor on the special verdict. (6) The court erred in overruling the appellant's motion for a new trial. (7) The court erred in sustaining the appellee's motion for judgment in his favor on the special verdict.

The first assignment of error discussed by appellant is the second in order, which calls in review the action of the court in overruling its petition to remove the cause to the Federal court. It is contended that it is shown in the body of the complaint that the amount involved exceeds $2,000.00, and, as the appellant is a foreign corporation and the appellee is a citizen of Indiana, as averred in the petition to remove, the cause was removable, and it was error to overrule the petition. The complaint, after describing the injuries appellee received, contains this averment: "By reason of which he [appellee] was greatly and permanently disabled, and made to suffer great bodily pain and mental anguish, to his damage in the sum of ten thousand dollars." The prayer of the com-plaint is as follows: "Wherefore plaintiff demands judgment for one thousand nine hundred and ninety-nine and 99-100 dollars."

Under the provisions of the Federal statute, a cause may, upon proper application and bond, be removed from a state court to the Federal court having juris-diction, when the amount in controversy exceeds $2,000.00, and such controversy is between citizens of different states. It is the duty of the court, in de-ciding whether a cause is removable under this statute, to look to both the complaint and petition for removal. If it appears from the complaint that the amount involved exceeds $2,000.00, and from the petition that the controversy is between citizens of different states, the filing of such petition, accom-

panied by the proper bond, ousts the jurisdiction of the state court, and the cause should be removed. If this were not the rule, and the court could only look to the averments of the petition, any cause could be removed, upon proper application, notwithstanding it might affirmatively appear from the complaint, that the amount involved was less than $2,000.00; but the rule is firmly established in this State that the plaintiff's recovery is limited to the amount demanded in the complaint. There are cases holding that after verdict, a complaint may be so amended in its prayer, as to conform to the amount of the verdict and the proved facts, if such amount exceeds the original demand. *Ke-tuc-e mun-guah* v. *McClure*, 122 Ind. 541, 547. See, also, *McKinney* v. *State*, 117 Ind. 26; *Kettry* v. *Thumma*, 9 Ind. App. 498. Where such amendment is not made below, it will be treated as made on appeal. *Webb* v. *Thompson*, 23 Ind. 428; *Baker* v. *Simmons*, 40 Ind. 442.

Although appellee may have been damaged in the sum of $10,000.00 by the injuries complained of, yet, in case of appellant's liability, if he was content to limit his damages to less than that sum, the appellant cannot be heard to complain. We hold, that in determining the question arising on appellant's motion to remove, the amount in controversy was the amount demanded in the complaint, and the court was bound thereby. The amount demanded, being less than $2,000.00, there was no jurisdiction in the Federal court, and the trial court correctly overruled the petition to remove.

What we have said as to the second assignment of error, disposes of the third error assigned, as they both present substantially the same question. From the plea in abatement, it appears that the complaint was filed October 17, 1895, and was made returnable

October 31, 1895; that on October 23, 1895, while the papers were in possession of the appellant's counsel, appellee's counsel borrowed the papers from appellant's counsel, and changed the amount of the prayer in the complaint, from $10,000.00 to $1,999.99, and that the alteration was made for the express purpose of preventing the removal of the cause to the Federal court; that on the 28th of October, appellant filed its petition and bond for removal, and for these reasons prayed that the action abate. The court correctly sustained a demurrer to this plea. It is the settled rule, that before answer, a plaintiff may amend his complaint without leave of court. Conceding the truth of the facts stated in the answer in abatement, it was a recognized right appellee had to amend his complaint, and whether such amendment was for the purpose of preventing the removal of the cause to the Federal court or not, is not a question of legitimate inquiry. In making the amendment, he but exercised a recognized right which the law accorded to him, and appellant has no cause of complaint. If the appellee, by the amendment, intended to fix the limit of his alleged injuries or the amount of his recovery to $1,999.99, or to prevent a removal of his action to the Federal court, it was a question with which the court can have no concern.

Appellant's next contention is, that the complaint does not state facts sufficient to constitute a cause of action, and this question is presented for our consideration by the first assignment of error. The complaint was not challenged by a demurrer, and its sufficiency is questioned for the first time on appeal. The question is not by any means free from doubt or difficulty. We have stated quite fully the averments of the complaint, and we need not recur to them again in detail. The pivotal facts upon which the suffi-

ciency of the complaint rests and must be determined are, in brief these: Appellee was driving over and upon a public highway, with his daughter and another person. He was driving one horse, attached to a single buggy. The horse was ordinarily gentle and well broken. The public highway intersected and crossed appellant's right of way and track at "an acute angle." The view from the highway of the track was somewhat hidden by an orchard. That upon one side of the highway as he approached the track, and in close proximity thereto, were piles of cross-ties left there by appellant, while on the other side, was a ditch about three feet deep. That between the cross-ties and ditch the available space for travelers was about 16 feet. That when within about 80 to 100 feet of the track appellee observed for the first time an approaching hand-car, running at an unusual and high rate of speed, and propelled by the servants of appellant. That appellee's horse saw the hand-car at the same time appellee did, and at once became frightened, and, appellee "being unable to hold, control, or manage his said horse on account of his fright, * * * and being unable to turn and retreat, for the reasons aforesaid, said horse plunged and ran forwards and away, on and over said track, etc." Up to this point, we are clear that the complaint does not aver any facts upon which actionable negligence on the part of the appellant can be predicated. The facts averred show that the intersection of the highway upon which appellee was traveling, and appellant's railroad, was a dangerous place to travelers upon the highway. Appellee was chargeable with notice of such fact, and it was his duty to use care and caution, commensurate with the apparent peril, and this, we think, the complaint fairly shows he did. On the other hand, appellant,

in the operation of its hand-car, was bound to exercise a degree of care and caution commensurate with the surroundings, and the ordinary business incident to its operation. It is the settled law everywhere that where railroads intersect and cross public highways, such railroads have the right of way. In the operation of their trains, while they have the right of way, nevertheless they are required to recognize the rights of the traveling public upon such highways, and give all necessary warnings, and take all proper precautions, in the protection of life and property.

In the operation of all trains to which locomotives are attached the law in Indiana requires certain alarms to be sounded and signals to be given, on approaching public highway crossings; but in the operation of hand-cars, no statutory duties are prescribed. It follows, therefore, that in the lawful operation of a hand-car by a railway company, in the transaction of its legitimate business it is required to exercise only such care and caution, as may be required to protect the traveling public.

In the operation of a railroad, a hand-car is a necessary and useful device, for it is used by its servants in repairing the track, going from place to place, and for the purpose of determining whether or not such track is in a safe condition upon which to transport passengers and freight. As we have before remarked, there is no statutory rule regulating the operation of the hand-car, and so far as shown by the complaint, the appellant did not have any rule regulating the operation of its hand-cars. In operating its hand-car on the occasion complained of, appellant's servants, upon approaching the highway crossing, were not required to give any signal, or alarm, nor were they required to slacken their speed, or stop

to see if any one was approaching the crossing. The complaint avers that on the car were shovels and other tools used by appellant's servants in the performance of their duties; that they were bright and glistening, and, together with the speed and velocity of the car, were calculated to scare a horse of ordinary gentleness.

Appellee admits that appellant was not negligent in carrying upon the hand-car the shovels and tools described, for he says they were used by the servants in the performance of their duties. The act of negligence charged against appellant, stripped of all surplus matter resolves itself to this: That these tools, coupled with the speed and velocity of the car, suddenly coming in view, frightened appellee's horse, and this sudden fright caused the horse to become unmanageable, and he ran away. We cannot say, as a matter of law, that "the speed and velocity" with which the car was running, was in itself negligence. The rate of speed is not stated, nor is it shown that in the operation of the car there was anything unusual or out of the ordinary, calculated to scare a horse. Appellant's servants had a right to carry their tools upon the car, and as it is not shown that they were running the car in any unusual manner, no act of negligence in that respect is charged. The fact is plainly apparent from the averments of the complaint, that appellant's servants were operating a hand-car, in the discharge of their duties, in a legitimate and lawful manner, and while so operating it, appellee's horse came in sudden view of it, which frightened him to such a degree that he became unmanageable. To constitute negligence on the part of a railway company, in the operation of its road, facts must be stated which affirmatively show that the accident resulted from want of some precaution

which the railway company ought to have taken. *Hayes* v. *Michigan, etc., R. R. Co.*, 111 U. S. 228, 4 Sup. Ct. 369; *Louisville, etc., R. W. Co.* v. *Schmidt*, 134 Ind. 16. The averments of the complaint do not show that appellant's servants omitted to do any act or perform any duty imposed upon them, which they did not do or perform. In the case last cited, the court, speaking by Hackney, J., said: "As said in *Whitney* v. *Maine, etc., R. R. Co.*, 69 Me. 208, in speaking of the privilege of railway companies in operating their trains, they have 'necessarily the right to make all reasonable and usual noise incident thereto, whether occasioned by the escape of steam, rattling of cars, or other causes,' and we may add that persons whose duties call them near a railway must be presumed to know of this right and to act for their own safety, with reference to such right. *Norton* v. *Eastern R. R. Co.*, 113 Mass. 366."

In the case of *Louisville, etc., R. W. Co.* v. *Schmidt, supra,* appellee was approaching a railroad, upon which a locomotive was standing. As he neared the track, the engineer opened the safety-valve, the steam escaping suddenly in a loud, violent, and negligent manner by which appellee's horse became frightened, causing it to run away, etc. This the court held not to be negligence, though the complaint alleged that appellee was told by servants of appellants, that it was safe for her to cross the track. The holding of the court was based upon the ground that the use of steam in the operation of a railroad was a necessary and useful element, and that when a locomotive was standing still, with a full head of steam, and it was necessary for the safety of those in charge of it, that the steam escape, it was not negligence to open the safety-valve for that purpose. In the case of the *Omaha, etc., R. W. Co.* v. *Brady*, 39 Neb. 27, 57 N. W.

767, it was held that the appellant was not liable for an injury resulting from a team becoming frightened at the usual noise arising from a prudent and proper management of a train or engine. In Pennsylvania it was held that where a butcher was driving a team attached to a wagon containing meat, and the owner was engaged in delivering meat to customers on a public street, where such team became restive at the approach of a street-car, and upon its stopping near them and the gripman rang the bell, so that the horses became frightened, ran away and injured the owner, such facts were held not to constitute negligence. *Steiner* v. *Philadelphia Traction Co.*, 134 Pa. St. 199, 19 Atl. 491. In that case the court said: "The accident was wholly due to the fright of the horses. It was urged, however, that the gripman stopped his car where he should not have done so, and rang his bell needlessly. But he stopped at or near a crossing where he had a right to stop. We do not know why he stopped, nor are we bound to inquire. * * * These are the substantial facts of the case briefly stated. They disclose no negligence on the part of the company. The car did not touch the plaintiff or his team. The accident was wholly due to the fright of his horses." And so in the case at bar. The facts charged, clearly show that the accident, and the injury to the appellee, incident thereto, was the fright of appellee's horse, at the approach of a hand-car on appellant's track. There is no contention that appellant did not have a right to run the hand-car in the manner in which it was run, and the complaint does not state any facts from which the court can say, as a question of law, that appellant's servants neglected any duty they owed to appellee.

While a railroad company is operating its road, run-

ning its trains or hand-cars, in the usual and ordinary manner, not making any unusual, or unnecessary noises not incident to the prudent and usual conduct of its business, it would be a harsh and unreasonable rule to hold that it would be liable for injuries resulting from horses becoming frightened thereat. Such a rule would go for toward rendering the operation of a railroad impracticable, and be without reason or merit to commend it. A railroad company can only be held liable for negligence, when it neglects some duty, either of commission or omission, which it owes to the individual or public. Unless, therefore, there are other averments of the complaint, which show negligence of appellant's servants, we must hold that the complaint is fatally defective.

Following that portion of the complaint above quoted, are the following averments: "That while said animal was so frightened, at the appearance and approach of said hand-car, defendant's said agents and servants saw and were fully aware of his frightened condition, and the cause thereof, in ample time to have stopped the motion of said car in time to have quieted said horse, and in time to have prevented the injuries hereinafter complained of; and said agents and servants, with full knowledge of the facts aforesaid, carelessly, negligently, and unlawfully failed, refused, and neglected to stop said car, or check the speed thereof, though signaled and requested so to do, * * * and negligently and carelessly ran said car with great speed toward said crossing in the direction of said horse, and in close proximity to him, thus greatly increasing the fright of said horse, * * * by means of which acts * * * it rendered it impossible for plaintiff to hold, manage, or control said horse, etc." The substance of these allegations which we have just quoted, is that appellant's

servants were running a hand-car on appellant's track, approaching a public highway crossing at great speed; that as they approached the crossing they saw appellee in his buggy, near the crossing; saw that his horse was badly frightened; knew the cause of the fright; that he and his companions were in imminent peril, and yet with a full knowledge of such facts, continued to run said hand-car toward said crossing, and nearer appellee's horse, and made no effort to stop the car or check the speed; and, if they had done so, appellee could have managed his horse, and averted the injuries of which he complained. True, the allegations of the complaint, to the effect that but for the acts complained of, he could have controlled his horse, and averted the injuries, are largely speculative in their character; yet we think, that taking all the allegations together, they charge, with reasonable certainty, actionable negligence, on the part of appellant.

It is sound doctrine, strongly entrenched by the authorities, that when one person sees another in danger or peril, from which he is unable to extricate himself with reasonable care and prudence, it is the highest duty of such person so to act as not to increase the peril, and, if he does act in a manner to increase the danger, with a full knowledge of the facts, it is negligence, for which he may be required to respond in damages. *Citizens' Street R. W. Co.* v. *Lowe*, 12 Ind. App. 47; *Cincinnati, etc., R. W. Co.* v. *Long, Admr.*, 112 Ind. 166; *Indianapolis, etc., R. W. Co.* v. *Pitzer*, 109 Ind. 179; *Pittsburgh, etc., R. W. Co.* v. *Judd, Admr.*, 10 Ind. App. 213.

We might cite other authorities in support of the proposition but we deem it unnecessary. We hold the complaint good, not on the ground of the manner in which appellant's servants were running the hand-

car, and the sudden fright caused to the horse thereby, but on the ground of the averments in the complaint that after the first sudden fright, with a knowledge of the cause thereof, the servants continued the speed of the car, after observing the apparent danger to appellee, and not attempting to stop. These facts, as averred in the complaint, were acts of negligence. So far as the complaint shows, the proximate cause of appellee's injuries, was the failure of the appellant, through its servants, to exercise reasonable care, after discovering appellee's peril, coupled with the fact that they knew the cause of the fright of the horse.

It has been held that though a person may have subjected himself to injury by his own negligence, yet he may recover for such injury if the person inflicting it could have avoided it after discovering his danger, or if he failed to use ordinary care.  Judge Thompson states the rule as follows:  "Perhaps a better expression of this rule is, that although the plaintiff has negligently exposed himself or his property to an injury, yet if the defendant, after discovering the exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages." Thompson on Negligence, 1157, note. See, also, Beach on Contributory Negligence, section 54; *Barker* v. *Savage*, 45 N. Y. 191, 194; 6 Am. Rep. 66; *Brown* v. *Lynn*, 31 Pa. St. 510; *Morris* v. *Chicago, etc., R. W Co.*, 45 Ia. 29; *Grand Trunk R. R. Co.* v. *Ives*, 144 U. S. 408. We think the complaint states a good cause of action, and that the demurrer was rightly overruled.

Appellant, at the proper time, moved in writing to strike out parts of the complaint which motion was overruled, and the questions arising thereunder are properly presented for our decision. It is the proper

practice, where a pleading contains irrelevant or redundant matter, to move to strike it out.    Elliott's General Practice, section 1040; *Booher* v. *Goldsborough*, 44 Ind. 490; *Rogers* v. *Smith*, 17 Ind. 323, 79 Am. Dec. 483.

The complaint in this case is not by any means a model pleading, and contains much irrelevant and redundant matter, and appellant sought to eliminate it by a motion to strike out.    While parts of the complaint might have gone out on appellant's motion, yet there was no reversible error in overruling the motion.    It may be stated as a general rule, that it is harmless error to overrule a motion to strike out parts of a pleading.    Elliott's General Practice, section 1040; *Walker* v. *Larkin*, 127 Ind. 100; *Brickley* v. *Edwards*, 131 Ind. 3; *Sprague* v *Pritchard*, 108 Ind. 491.    This disposes of the fourth assignment of error.

The sixth assignment of error is, that the court erred in overruling appellant's motion for a new trial.    It is insisted by appellant with much earnestness that there is no evidence in the record to support the material averment of the complaint that the appellant's servants in charge of the hand-car knew the cause of the frightened condition of the appellee's horse.    It clearly appears, both by the evidence and the verdict, that when appellant's servants first came in view of appellee's horse, it was plunging and rearing, and was badly frightened, but we have searched the record in vain to find any evidence that even tends to show that they knew the cause of the fright.

The averment that appellant's servants knew the cause of the fright of appellee's horse was material, and proof thereof was essential.    Such averment in our judgment was the crucial test of the sufficiency of the complaint.    When those in charge of the hand-

car first saw appellee and his horse, they were some distance from the track. They were engaged in discharging the duties they owed to their master. They were operating the car in a lawful manner. There was no apparent danger of a collision between the hand-car and appellee's horse and buggy. They had the right of way and had a right to presume appellee would not attempt to cross the track in front of them. They were under no obligation to appellee to stop the car, unless such obligation arose from the fact that they knew the cause of the frightened condition of the horse, and that by stopping the car, the danger to appellee might have been averted.

There is not a word of evidence in the record to show such knowledge on the part of appellant's servants, while, on the contrary, there is direct and positive evidence that some of them at least, had no such knowledge. The evidence shows that there were six persons on the hand-car, and five of them were called as witnesses. The car was going east, and four of the men were facing east, and two west, and all "pumping," or engaged in propelling the car. The speed of the car, as found by the jury, was from ten to twelve miles an hour. One of the persons on the hand-car testified that he did not know the horse was scared at the car, which fact was brought out on cross-examination by appellee. Another testified that he did not think the horse was scared at the car, while the other four were not asked nor did they say anything about it.

Notwithstanding the evidence, or rather want of evidence in support of this point, the jury found that the servants of appellant did know the cause of such fright, etc., as will appear from the following interrogatories and answers: "(84) Did the defendant's agents and servants in charge of said hand-car

know that said horse was frightened and plunging and rearing as aforesaid on account of the approach of said hand-car at the time they first saw him as aforesaid? Yes." "(128) Did the defendant's said agents and servants, with full knowledge that plaintiff's said horse was scared and becoming unmanageable by reason of the approach of said hand-car, run said hand-car in the direction of said horse a distance of 150 to 200 feet, and to a point within 15 to 20 feet of said horse? Yes." "(130) Did the defendant's said agents and servants in charge of said hand-car know, during all the time they were running said hand-car in the direction of said horse, while he was in said frightened condition as aforesaid, that the nearer they approached the said horse with said car, the worse and more serious would be his fright, and more dangerous and perilous the plaintiff's condition? Yes." "(147) Did the plaintiff's said horse become unmanageable and run away by reason of the act of defendant's agents and servants in charge of said car in so running said car said distance of 150 to 200 feet in the direction of plaintiff's said horse after the defendant's said agents and servants in charge of said car had full knowledge and notice of the frightened condition of plaintiff's said horse, and the cause of his fright, and full notice and knowledge that their running and propelling said car in the direction of said horse was causing said fright? Yes."

Here we have the finding of a material fact, essential to appellee's right to recover, and such finding having been made without even the shadow of evidence to support it. As has been said, it was a material fact, and before the jury were authorized to find it, it was necessary that there must have been some evidence upon which to base it. As was said in *Mann*

v. *Belt R. R., etc., Co.*, 128 Ind. 138: "The courts cannot close their eyes to matters of general notoriety, and to matters of every day observation." And hence we know that it is not an unusual occurrence for a horse to become frightened at inanimate or other objects upon or at the side of a public highway. In many instances the very appearance of a railway causes a horse to frighten, as though there was an instinct of the ever present danger lurking about it.

So far as it appears from the evidence, appellant's servants might have reasonably supposed that appellee's horse had become frightened at some object before the hand-car came into view, for when they first saw him, he was greatly frightened, rearing, plunging, and running away. From all the facts and circumstances shown by the evidence, there was good reason for such belief. We are not unmindful of the very wholesome rule that under certain circumstances a jury may infer a fact from other proved facts, circumstances, and conditions, for then there is a reasonable and tangible basis, from which such inference may be fairly drawn. But a jury is not authorized to assume that a fact exists, in the absence of any proof thereof, or where there is no fact, condition, or circumstance upon which a reasonable or legal inference may be predicated.

The evidence clearly shows, and the jury found, that the men on the hand-car did not know that appellee's horse was frightened beyond control, until they saw it running away. Interrogatory thirteen and answer are as follows: "Did the men on the hand-car know that plaintiff could not manage his horse until they saw it running away. Answer, No." It is further found, as a fact, that appellee had crossed the railroad track, before the hand-car

reached the crossing. Eliminating from the verdict interrogatories 84, 128, 130, and 147, and answers, which we have just quoted, upon the question of knowledge of appellant's servants of the cause of the fright of the horse,—and they must be eliminated because of a total failure of proof,—it leaves the verdict defective, because of a failure to find a material fact, upon a material issue, essential to appellee's right of recovery. For a failure of the jury to find such material fact, appellee was not entitled to judgment.

The rule is firmly established in this State that, the appellate tribunal will not disturb a verdict of a jury or the finding of a court upon the mere weight of evidence. Where there is some evidence to sustain the verdict or finding, no difference however slight, they will not be disturbed, but where there is no evidence to support the verdict or finding upon a material question in issue, the judgment will be reversed.

As was said in *Kitch* v. *Schoenell*, 80 Ind. 74:. "But where, as in this case, there is no evidence in the record tending to sustain the verdict upon the real question in issue, it is as much the duty of this court to reverse the judgment below and remand the cause for a new trial, as it would be for any error of law occurring at the trial and excepted to." See also *Roe* v. *Cronkhite*, 55 Ind. 183; *Davis* v. *Grater*, 62 Ind. 408; *Butterfield* v. *Trittipo*, 67 Ind. 338; *Riley* v. *Boyer*, 76 Ind. 152; *Norwood* v. *Harness*, 98 Ind. 134, 49 Am. Rep. 739; *City of Warsaw* v. *Dunlap*, 112 Ind. 576.

An additional reason assigned in appellant's motion for a new trial was the admission, over its objection, of certain evidence. In his examination in chief, appellee, among other questions, was asked the following: "I will ask you whether or not you could have held your horse and controlled it, had persons

in control of hand-car stopped, say, within any place from one hundred to one hundred and fifty feet where you first saw it? Answer. I could handle the horse all right." "Had it not been for those ties in the road, you may state whether or not you could have turned your horse in the highway or not? Answer, I could have turned the horse, there was not   *   *   * I think so." To comprehend fully the scope, force and effect of these questions and answers, it is necessary for us to quote further from the evidence of appellee, and to that end we add the following: "You may state now what the hand-car and what the horse did from the time he began jumping there till he ran away? Ans. Just kept on prancing all the time." "You may state whether or not it was possible for you to stop your horse or control it during that time? Ans. No sir." "Could you have stopped him from the time you saw it, and when he saw the car could you have stopped the horse? Ans. No sir." "Did you cross the crossing? Ans. Yes." "Isn't it a fact the hold-back strap broke, and the buggy ran on to the horse about the time you crossed the railroad? Ans. Yes sir." "Was that before you crossed the railroad? Ans. Yes sir."

Among other findings in the verdict are the following: "(74) At the instant plaintiff's horse saw said hand-car did he become frightened and excited? Ans. Yes." "(77) Did said horse at said instant when he saw said hand-car begin plunging and rearing and appearing frightened? Ans. Yes." "(92) Did the plaintiff's said horse continue to jump and forge forward from the time he saw said hand-car until he crossed said railroad track at said crossing? Ans. Yes." "(111) From the time plaintiff saw said hand-car was it possible for him to turn back in said highway and avoid said injury? Ans. No."

"(134½)   Could and would plaintiff have controlled his said horse and prevented said injury to himself, had the defendant's said agents and servants in charge of said car stopped said car before they ran the same within fifty feet of plaintiff's said horse?   Ans. Yes."   Interrogatory 134½, and the answer were unquestionably bottomed upon the evidence of appellee, wherein he was permitted to testify, over appellant's objection, that he could have controlled and managed his horse, after its fright, if the hand-car had been duly stopped.

The question propounded to appellee was one calling for an opinion, and the answer in response to it was but an expression of an opinion.   The rule is firmly established that a witness may express an opinion, under certain circumstances, but there must first be laid the foundation for such opinion.   Thus, in the case of the sanity or insanity of a person, a witness, after showing his acquaintance and relations to the party, what he has seen him do, heard him say, and observed his actions and conduct, may give his opinion, based upon the facts stated, as to whether he is sane or insane.   But here a witness is asked to express his opinion as to an important and material fact, without there first having been laid any foundation therefor.   The evidence shows that the horse that appellee was driving was seven years old; that he was ordinarily gentle and well broken, and that he was safe to drive.   It further shows that appellee raised and broke the horse, and had driven him many times, but it is not shown that the horse ever became frightened and unmanageable before, or that appellee had ever had any experience with him when he was in that condition, or that he had ever tried to control or manage him when he was frightened.

As is averred by the complaint, the appellee "Being

unable to hold, control, or manage said horse on account of his fright, * * * said horse plunged forwards and ran forwards and away, etc." As is shown by the evidence and found by the jury, the very instant he saw the car he became frightened and unmanageable, and appellee himself said that it was impossible for him to stop or control his horse from the time he first saw the car.

Here we have a horse frightened beyond control, from the very instant of his fright. We must assume, from our knowledge of human nature, that the appellee himself, from the very circumstances and conditions that confronted him, was also frightened and excited. Under such conditions, so far as it appears from the evidence, it was utterly impossible for appellee to know whether or not he could have controlled the horse, if the car had been stopped. It was but the expression of an unauthorized opinion. Mr. Best, the most philosophical of writers on the law of evidence, as expressed by Judge Gillett, says: "The use of witnesses being to inform the tribunal respecting facts, their opinions are not generally receivable as evidence. This rule is necessary, to prevent the other rules of evidence being practically nullified. Vain would it be for the law to constitute the jury the triers of disputed facts, to reject derivative evidence when original proof is withheld, and to declare that a party is not to be prejudiced by the words or acts of others with whom he is unconnected, if tribunals might be swayed by opinions relative to these facts, expressed by persons who come before them in the character of witnesses." Best on Evidence, section 511. Mr. Abbott expresses the rule thus: "In a matter not requiring special skill or experience * * * opinion evidence is not generally admissible. In such cases it is not competent to ask a wit-

ness whether the casualty would or would not have occurred had a specified circumstance been different." Abbott's Trial Evidence, p. 586, section 13.

"The general rule is, that witnesses must testify to facts, and not to opinions; they must only state facts, not draw conclusions or inferences. To allow them to draw conclusions or inferences, is to usurp the province of the court or jury." 7 Am. and Eng. Ency. of Law, p. 492; *Clark* v. *Fisher*, 1 Paige (N. Y.) 171, 19 Am. Dec. 402; *Neilson* v. *Chicago, etc., R. W. Co.*, 58 Wis. 516, 17 N. W. 310; *Watson* v. *Milwaukee, etc., R. W. Co.*, 57 Wis. 332, 15 N. W. 468; *McNiel* v. *Davidson*, 37 Ind. 336; *Brunker* v. *Cummins*, 133 Ind. 443; *Pindar* v. *Kings County Fire Ins Co.*, 36 N. Y. 648, 93 Am. Dec. 544; *Bass Furnace Co.* v. *Glasscock*, 82 Ala. 452, 2 South. 315, 60 Am. Rep. 748; *Heath* v. *Slocum*, 115 Pa. St. 549, 9 Atl. 259; *Abbott* v. *People*, 86 N. Y. 460; *People* v. *Murphy*, 101 N. Y. 126, 4 N. E. 326, 54 Am. Rep. 661; *Sloan* v. *New York Central R. R. Co.*, 45 N. Y. 125; *Campbell* v. *State*, 10 Tex. App. 460; *Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Allen* v. *Stout*, 51 N. Y. 668.

To the general rule above quoted, there are exceptions, but the question now under consideration does not, in our judgment, come within any of the exceptions. We think the rule is firmly fixed by the Supreme Court in *Brunker* v. *Cummins, supra*. In that case appellee owned a building, the lower part of which he occupied as a storeroom and warehouse, and the upper part was leased to a lodge of Odd Fellows. A walk ran along the side of the building and was usually traversed by members of the lodge in going to and departing from lodge meetings. The stairway leading up to the lodge room was reached by ascending a platform raised several inches above the walk. A barrel was rolled upon the walk, near

the platform, and in coming out of the lodge room the appellant struck his foot against the barrel and was thrown down and injured. It was contended by appellee in the trial that there was plenty of room for a person to walk between the barrel and the wall in safety, and he was asked this question: "You may state, Mr. Cummins, whether there was sufficient room, between where the barrel was and the wall for a man to walk with safety?" To which he made answer: "Yes, I think so, as much room as we commonly have; as much room as between the well-house and brick wall." Elliott, J., speaking for the court said: "The court violated the rule forbidding the expression of opinions by witnesses, in allowing this testimony to go to the jury. * * * The question could not possibly be answered without embracing in the answer the appellee's opinion of what one using the walk could safely do, and upon this point there could be no opinion without mentally deciding the extent to which the walk was obstructed, and the degree of care exercised by the person passing along it, so that in answering the question, the appellee, of necessity, gave an opinion on two important points upon which it was the exclusive province of the jury to formulate a judgment and give it expression in their verdict. * * * In this case, the witness, in answering the question asked, necessarily gave judgment in the form of an opinion, * * * and thus the rule was violated. * * * The question required the witness to express an opinion upon matters respecting which he showed no special knowledge or skill, and this of itself was enough to condemn it." See, also, *Wilson* v. *Bennett,* 132 Ind. 210.

The two questions above quoted which were asked of and answered by appellee, over appellant's objections, when measured by the authorities cited, were

improper, because they called for the opinion of witnesses. In this case appellee was asked if he could have turned his horse, and thus averted the injury, if the highway had not been obstructed by the cross-ties; and whether or not he could have managed and controlled the horse had appellants stopped the hand-car, etc. In *Brunker* v. *Cummins, supra,* the witness was asked if there was not room to walk between the barrel and the wall, and the court held that it was error for which the judgment should be reversed. Appellee's answer that he could have controlled the horse, and could have turned him in the highway under the conditions named, was the expression of an unauthorized and unwarranted opinion,—the merest conjecture on his part.

This evidence was directed to material points and was of importance, and must have had weight and influence with the jury, for they found in harmony with his answers, and there was no other evidence upon which such findings could be based. Where evidence is material and bears upon material points in favor of the party who introduces it, the presumption is that it was influential, and that, if incompetent, harm was done in letting it go to the jury. *Brunker* v. *Cummins, supra.* Elliott's App. Proc., section 594, and authorities there cited. As was said in *Brunker* v. *Cummins, supra,* the opinion of a witness whose conduct and demeanor impress the jury favorably, going to them under the sanction of the court, may carry as much weight as the statement of a fact, and for this reason it is seldom that incompetent opinion evidence can be said to be harmless

In highway cases witnesses are not permitted to give an opinion as to the public utility of a highway which it is proposed to vacate or open. That is a question for the jury or court to determine from the

evidence, and not a fact concerning which a witness may testify, for this would be to usurp the function or right of the jury or court. As was said in *Hughes* v. *Beggs*, 114 Ind. 427: "It is settled that witnesses cannot give an opinion upon the exact point in issue; and it is also settled, that whether the opening or vacation of a highway will be of public utility is not a question upon which witnesses can express their opinions." *Moore* v. *Augc*, 125 Ind. 562; *Loshbaugh* v. *Birdsell*, 90 Ind. 466; *Yost* v. *Conroy*, 92 Ind. 464, 47 Am. Rep. 156; *Thompson* v. *Deprez*, 96 Ind. 67; 1 Greenleaf Evidence, section 440. The judgment is reversed, and the court below is directed to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Comstock and Black, JJ., dissent.