## INDIANAPOLIS TRACTION & TERMINAL COMPANY *v.* SMITH.

### [No. 5,736.  Filed May 29, 1906.]

1. APPEAL AND ERROR.—*Complaint.—Initial Attack on Appeal.—*A complaint will be considered sufficient when attacked for the first time on appeal, where it does not wholly fail to allege the material facts necessary to constitute a cause of action, mere uncertainty or inadequacy of averment being insufficient to render it bad.   p. 164.

2. SAME.—*Complaint.—Initial Attack on Appeal.—*A complaint attacked for the first time on appeal will be held good if it states facts sufficient to bar another action.   p. 165.

3. STREET RAILROADS.—*Person in Peril.—Duty of Company.—*It is the duty of a street railroad company when it sees a person in peril from the operation of its cars to act so as not to increase such danger.   p. 165.

4. PLEADING.—*Complaint.—Street Railroads.—Failure to Look.—*A complaint alleging that the motorman of defendant street railroad company negligently failed to look ahead; that by the exercise of reasonable care he could have seen plaintiff in his dangerous position on the track from which he could not extricate himself, and that by reason of such negligence plaintiff was injured, is sufficient, when attacked for the first time on appeal.   p. 165.

5. APPEAL AND ERROR.—*Weighing Evidence.—Street Railroads. — Negligence. — Contributory. — Question for Jury. —* Where the evidence was conflicting whether the defendant street railroad company was negligent in failing to see and avoid injury to plaintiff while driving a heavily loaded wagon on its

Indianapolis Traction, etc., Co. *v.* Smith—38 Ind. App. 160.

track on a narrow street, and whether plaintiff was guilty of contributory negligence in going on such street, the verdict is conclusive on appeal.  p. 166.

6.  TRIAL.—*Instructions.—Street Railroads.—Failure to Look.*— An instruction that defendant street railroad company must use reasonable care to discover persons on its track, and its failure to do so, or failure to stop its car, when possible, after such discovery, resulting in injury, renders it liable for such injuries, is correct.  p. 170.

7.  SAME.—*Instructions.—Negligence.—Failure to Negative Contributory Negligence.*—An instruction that plaintiff should recover if defendant's negligence is established is not bad where, in other instructions, the jury were told that if plaintiff was guilty of contributory negligence he could not recover.  p. 170.

8.  SAME.—*Instructions.—Undisputed Facts.*—The court may assume in his instructions the truth of undisputed facts without invading the province of the jury.  p. 171.

9.  SAME.—*Instructions.—Street Railroads.—Person in Peril.— Care Required.*—An instruction that the defendant street railroad company, after discovering a person in peril by the operation of its car, must exercise the highest degree of care to avoid his injury, is not erroneous.  p. 171.

10.  SAME.—*Instructions.—Street Railroads.—Failure to Look.*— An instruction that if the conditions were such that the motorman of defendant street railroad company's car could have seen plaintiff in peril by the exercise of ordinary diligence, and could have stopped his car in time to avoid the injury, and he failed to do so, defendant is liable therefor, provided plaintiff was not guilty of contributory negligence, is correct.  p. 172.

11.  DAMAGES.—*Excessive.*—Where there is nothing to indicate that the jury was improperly influenced by prejudice or partiality, the damages assessed will not be considered excessive. p. 172.

From Morgan Circuit Court; *Joseph W. Williams,* Judge.

.Action by James Smith against the Indianapolis Traction & Terminal Company.  From a judgment on a verdict for plaintiff for $1,000, defendant appeals.  *Affirmed.*

*F. Winter, W. H. Latta, Oscar Matthews* and *Payne & Oberreich,* for appellant.

*George Young* and *George W. Grubbs,* for appellee.

VOL. 38—11

WILEY, J.—Appellee recovered a judgment against appellant in the court below, for a personal injury growing out of a collision of one of appellant's cars with the wagon in which he was riding.

Appellant relies for a reversal, as disclosed by its assignment of errors, upon the insufficiency of the complaint, and the overruling of its motion for a new trial. The complaint is in two paragraphs, and its sufficiency is questioned for the first time in this court.

Counsel for appellant have not made any objection to the sufficiency of the first paragraph of the complaint, but direct their argument against the second paragraph. Omitting the formal parts of the second paragraph it is alleged that appellant owned and operated a line of street railway along and over Indiana avenue; that said avenue at the point where appellee was injured was very narrow; that appellant had laid double tracks upon and over said street; that the avenue extends in a northwesterly and southeasterly direction; that on the southwest side thereof there is a ditch running along the side of the street; that it is about one and one-half feet deep and five feet wide; that on January 15, 1904, said ditch was filled with ice, snow, sleet and water, and was in a dangerous and unsafe condition, so that it was impossible for appellee to drive in or near to it; that there was not room enough for him to drive with the wagon between such ditch and appellant's track, without getting so near to the track as to obstruct the passage of a street car thereon; that at about 9 o'clock p. m. of said day appellee was driving in a southeasterly direction on Indiana avenue, and on the right-hand side of the street, and between appellant's track and said ditch; that he was driving a heavily-loaded wagon; that he was driving as near to the ditch as it was safe to drive, and the only place he could drive as he was going in said direction; that the space between appellant's track and the ditch was not sufficient for him to drive and permit the cars to pass; that

before he drove near or onto the track he stopped and looked for cars coming from the northwest on said track, but that he could not see any cars in sight; that he then drove in the aforesaid narrow place; that one of appellant's cars approached from the northwest, traveling at a high and dangerous rate of speed, to wit, thirty miles per hour, and was running in the same direction that appellee was driving; that said car was in charge of a motorman and conductor who were agents of appellant; that by the exercise of reasonable care the motorman could have seen appellee on appellant's track; that if said motorman had kept a lookout at said time and place he could have seen appellee in time to stop the car before running into his wagon; that there was nothing to obstruct the view of appellant's servants at said place, or to prevent their seeing appellee driving on the track, in time for the motorman to stop the car before injuring him. It is then alleged that the servants in charge of the car did not give any warning of its approach, did not sound the gong or ring the bell; that appellant did not stop said car nor check its speed to give appellee an opportunity to get off the track; that he could not have gotten off the track in time to avoid the injury, while the car was running at such a high and dangerous rate of speed; that appellant was grossly careless and negligent in running the car at such rate of speed, and in not sounding the gong or ringing the bell, as a warning to appellee, and in not stopping the car before running into him. It is further alleged that appellant, by the exercise of reasonable care, could have stopped the car before colliding with appellee, and that appellant's servants knew, or ought to have known, that appellee could not get out of the way of said car at the rate of speed it was running; that appellant's car in charge of the motorman and conductor, as aforesaid, "carlessly and negligently ran into plaintiff's wagon, * * * destroying the same, throw-

ing it into the ditch, and by reason of said collision threw this plaintiff violently to the ground," etc., whereby he was injured.

While this paragraph is not a model pleading, as against an attack for the first time in this court, it will be upheld for two reasons: (1) In order that a complaint

1. may be successfully attacked by an assignment of errors on appeal, there must be total failure to allege some fact essential to the existence of a cause of action. Uncertainty or inadequacy of averment will not render a complaint bad when attacked for the first time on appeal. In the case of the *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 83 Am. St. 200, it was said: "The total absence from the complaint of any averment of some fact or facts essential to the existence of the cause of action, or the presence of some averment that absolutely destroys the plaintiff's right of recovery, may be for the first time raised in this court by an independent assignment of errors under §89 of the code (§346 Burns 1894, §343 R. S. 1881 and Horner 1897), but mere uncertainty, or inadequacy of averment, such as might have been amended and cured upon motion seasonably made, will be deemed to have been waived by a defendant who proceeds with the trial to final judgment without objection, and who brings his complaint for the first time, after the cause of action has been strengthened by the verdict of a jury, and the presumptions indulged in favor of the decisions of the trial court upon motions for judgment, and for a new trial." See, also, *Peoria, etc., R. Co.* v. *Attica, etc., R. Co.* (1900), 154 Ind. 218; *Town of Knightstown* v. *Homer* (1905), 36 Ind. App. 139; *Efroymson* v. *Smith* (1902), 29 Ind. App. 451; *Cleveland, etc., R. Co.* v. *Baker* (1900), 24 Ind. App. 152; *Brandis* v. *Grissom* (1901), 26 Ind. App. 661.

(2) When the sufficiency of a complaint is tested for the first time on appeal, by an assignment of errors, it will

Indianapolis Traction, etc., Co. v. Smith—38 Ind. App. 160.

be held sufficient if it contains facts enough to bar
2. another action. *Harris* v. *State, ex rel.* (1890),
123 Ind. 272; *Peters* v. *Banta* (1889), 120 Ind.
416; *Town of Knightstown* v. *Homer, supra,* and cases
cited.

It is the duty of the employes of a street railway company, in the operation of cars, when they see a person in
peril, from which he cannot extricate himself, to act
3. so as not to increase such danger, and when they fail
to exercise that degree of care required of them,
and such failure results in injury, the company becomes liable for resulting damages. *Lake Erie, etc.,
R. Co.* v. *Juday* (1898), 19 Ind. App. 436. In the
case just cited this court said: "It is sound doctrine, strongly entrenched by the authorities, that when one
person sees another in danger or peril, from which he is
unable to extricate himself with reasonable care and prudence, it is the highest duty of such person so to act as not
to increase the peril, and, if he does act in a manner to
increase the danger, with the full knowledge of the facts,
it is negligence, for which he may be required to respond
in damages." A number of authorities in support of this
rule are there cited, to which we refer without comment.

In this second paragraph of complaint it is directly
averred that appellant's servants in charge of and operating
the car could, by the exercise of reasonable care,
4. have discovered appellee's peril in time to avoid
injuring him. It is clear to us that there is not a
total failure to allege some fact or facts essential to the
existence of appellee's cause of action, and that the facts
alleged are amply sufficient to bar another action. Applying these rules, and upon the authorities cited, the paragraph is sufficient as against an attack for the first time in
this court.

In its motion for a new trial appellant has assigned
twenty-nine reasons in support of it. We will consider

only such as have been discussed, and in their order
5. of discussion.    One of the reasons assigned for a
new trial is that the verdict is not sustained by
sufficient evidence, and upon this point it is contended by
counsel that there is no evidence to support the verdict.
Under the rule, so firmly established, that this court can-
not weight conflicting evidence, it becomes our duty to hold
that if there is any evidence in the record supportive of
the verdict, we are not authorized to reverse a judgment
upon the evidence.    There is some conflict in the evidence
as to some vital points in the case, and this being true we
can neither weigh nor reconcile such conflict.    It is con-
tended on the part of counsel for appellant that the evi-
dence acquits appellant of any negligence, and shows that
appellee was guilty of contributory negligence.    As relates
to these two questions, the evidence, in brief, is as follows :
Appellee was driving a heavily loaded wagon on Indiana
avenue, going in a southeasterly direction.    The accident
occurred between Milburn and Hiawatha streets, and
about seventy-five yards from the latter street.    There was
an electric light at the intersection of Hiawatha street and
Indiana avenue, which threw its light beyond Milburn
street to Montcalm street.    The night was not real dark,
but partly. cloudy.    The evidence tends to show that the
ground at Hiawatha street is about fifty inches higher than
it is at Milburn street.    Appellee was driving in a direct
line of vision between the motorman and the electric light,
from the time the car came near Milburn street.    The elec-
tric light at Hiawatha street hung on ·an arm extending
from ' a pole, and threw light upon the tracks.    As to
whether the motorman in charge of the car gave any alarm
by sounding the gong or ringing the bell is conflicting.
There was a ditch at the outer edge of the street, and the
space between the ditch and the track was about six feet
and six inches.    Appellee testified that, to avoid driving
into the ditch, he pulled onto the track "one wheel just

inside the track, to hold myself from sliding off into the ditch, and started ahead." He further testified that he both looked and listened for cars going in both directions before he drove onto the track, and saw a car approaching him on the opposite track, but did not see one behind him going in the same direction that he was.

One of appellant's witnesses testified that at the point of collision a person would have to drive very carefully to allow a car to pass, and pretty well out into the gutter. The motorman testified that he did not see the wagon in which appellee was riding until he was within about twelve feet of it. The grade of Indiana avenue from Milburn to Hiawatha streets is an incline. The speed of the car was variously estimated by the witnesses at from eleven to twenty miles per hour, one witness placing it at twenty-five miles an hour. There was evidence also tending to show that the car ran from seventy-five to one hundred feet after it struck the wagon. The wagon appellee was driving was six feet wide. There were no obstructions on Indiana avenue, between the point where the car turned from Montcalm street onto the avenue and the point of collision that would obstruct the motorman's view of the wagon in front of him. There is some evidence to the effect that appellee could not have crossed over the tracks and driven on the opposite side of the street. Under this evidence the question of appellant's negligence and appellee's contributory negligence was one for the jury, under proper instructions, and the jury having resolved the question of appellant's negligence against it, and appellee's freedom from fault in his favor, it is beyond our power to review that finding upon the evidence.

The twelfth, thirteenth and fourteenth instructions, given by the court and excepted to by appellant, are as follows: "(12) It is the duty of a motorman in charge of a street car to exercise reasonable care and diligence to discover any person or vehicle upon or near to the track

168    APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Smith—38 Ind. App. 160.

in front of the car which he is operating, and if he discovers a vehicle in charge of a person upon said track, or so near as likely to be struck by said car, and he has reason to believe that said person is unconscious of his danger, or unable to avoid it, it is his duty to use every reasonable effort to stop the car, and if in such case he causes or permits said car to run with unabated speed, and without effort to check or stop the same, until it runs into and strikes said vehicle, destroying it, injuring the horses attached to it, and the person in charge of it, the company would be guilty of negligence, and a recovery could be had for any injury sustained.

"(13) It is the duty of a motorman, running and operating a street car along and upon the streets of a city, to have it under such control that it may be stopped within a short distance, if occasion requires. From his failure to exercise reasonable care in that regard, negligence may be inferred. It is also the duty of a motorman to exercise the highest degree of care to avoid injury to a person after discovering his peril. If you find from a preponderance of the evidence that on January 12, 1904, the defendant company was running and operating a line of railway along and upon Indiana avenue, in the city of Indianapolis, having double tracks thereon; that at a point near where said line of railway intersects Hiawatha street said Indiana avenue is narrow, said street being sixty feet wide, and no more; that at said time and at said place on said street, and on the southwest side of said street, there was a ditch one and one-half feet deep and five feet wide, which was filled with water, snow and ice, and was in a dangerous and unsafe condition to drive upon or over with a vehicle, and there was not sufficient space between said ditch and the tracks of defendant's railway for a person to drive with a vehicle, without obstructing said street cars; that said company and its employes had full knowledge of the condition of said street and of the dangerous condition of 'said

ditch for the passage of vehicles; that on January 19, 1904, plaintiff, in the transaction of his business, was driving a horse and loaded wagon along Indiana avenue; that before he reached or entered upon said narrow place he stopped and looked to see if any car was in sight or approaching; that there was none; that thereupon he drove carefully along the narrow space, the wheel of his wagon being upon said track or very near to it; that as he was so driving he saw one of the defendant's cars approaching from the northwest, running at a high and dangerous speed; that he was in plain view of said car and there was nothing to prevent the conductor and motorman in charge of said car from seeing him or his wagon in the perilous situation in which he was; that no warning was given; that the speed of said car was not lessened, nor was said car stopped nor attempted to be stopped; that plaintiff endeavored to drive out of the way and avoid said car, but could not do so; that said car was negligently run against his said wagon, overturning it and throwing it in the ditch; that plaintiff was thrown to the ground, his leg was broken and he was otherwise injured, his wagon broken and his horse injured, as in complaint set out—then I instruct you that you should find for the plaintiff, unless you should further find that plaintiff, by his own negligence, contributed to the injury.

"(14) If you find from the evidence that upon the day and at the time of the accident it was clear, and the view at the point where it occurred was unobstructed, so that the motorman could have seen plaintiff's wagon on or near the track, if he had exercised ordinary diligence, and further find that the motorman had knowledge of the conditions existing at the place of the collision, and that he could have seen the plaintiff's peril in time to stop the car and prevent the accident, by the exercise of reasonable care, then I instruct that his failure to do so, thus causing the injury, would constitute negligence upon the part of the company defendant, and you should find for the plaintiff, unless you

further find that plaintiff, by his own negligence, caused or contributed to the injury complained of."

The objections which counsel urge to the twelfth instruction are: (a) That it assumes that the car could have been stopped if the motorman had used the means at his hand; (b) that the car might have been so close upon the wagon that all attempts to stop it would have been futile; (c) that the question of negligence should not be made to rest upon the fact as to whether an attempt was made to stop the car, if it was a physical impossibility to stop it after discovering the danger; (d) that the question of contributory negligence on the part of appellee is disregarded and liability is made to depend upon the acts of the appellant. The instruction as an entirety correctly states the law. We are unable to see anything in the instruction that assumes that the car could have been stopped. It is the theory and contention of appellee that the motorman could, by the exercise of reasonable care, have seen the wagon by reason of the light from the electric light and the headlight of the car. There is no doubt but that it is the duty of a motorman in charge of a street car to exercise reasonable care to discover a person or a vehicle upon or near to the track, in front of the car, and that is what, in the first part of the instruction, the court told the jury.

Omitting from the instruction the question of appellee's contributory negligence does not render the instruction erroneous when construed in connection with the other instructions, and the rule declared in the case of *Indianapolis St. R. Co.* v. *Schmidt* (1905), 35 Ind. App. 202. In that case it was said: "That the negligence of the plaintiff ceases to be the proximate cause of the injury when the defendant has opportunity to prevent it, and, with knowledge of the exposed condition of the plaintiff, negligently refuses to do so, is well settled in this state." If appellant's motorman could have seen appellee in time

to stop the car (and it was a question for the jury to determine from the evidence whether or not he could have seen him), his failure to see would be negligence for which appellant would be answerable. The instruction is not subject to the objections urged.

It is next urged that the thirteenth instruction is erroneous (a) because it assumes that the car was not stopped or attempted to be stopped; (b) because it assumes that the driver was in peril; and (c) because of the expression "the highest degree of care" as applied to the duty of the motorman, under the facts stated. We search the record in vain to find any fact even tending to show that the car was stopped or any attempt made to stop it.

Assuming that there was evidence tending to support all of the facts to which the court referred in this instruction, we do not think there was any error in directing the jury that under such facts the motorman was charged with the exercise of the highest degree of care.

In *Lake Erie, etc., R. Co.* v. *Juday* (1898), 19 Ind. App. 436, the question under consideration was embraced in the quotation from that case which appears in a former part of this opinion.

In the case of *Gagg* v. *Vetter* (1872), 41 Ind. 228, 242, the court quoted from *Kelsey* v. *Barney* (1855), 12 N. Y. 425, and approved the following: "Under some circumstances a very high degree of vigilance is demanded by the requirement of ordinary care. Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others are completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight."

The fourteenth instruction of which appellant complains, and against which counsel urge some objections, seems to

us so clearly and fairly to state the law applicable
to the facts that we do not deem it either necessary
or important tô take up the objections and discuss
them separately. The instruction is a correct statement of
the law.

One of the reasons assigned for a new trial was that the
assessment of damages was too large. The judgment was
for $1,000. There is nothing in the record to indicate that the jury, in fixing the amount of the
damages, was improperly influenced by prejudice
or partiality.

The other questions discussed by counsel relate to the
admission and rejection of certain evidence. Without referring to such evidence, after having carefully considered
the questions involved, we have reached the conclusion that
no reversible error was committed.

Judgment affirmed.