The Muncie Street Railway Company v. Maynard.

Filed Nov. 17, 1892.

---

No. 565.

THE MUNCIE STREET RAILWAY COMPANY v. MAYNARD.

STREET RAILROAD.—*Action Against for Injury to Property.—Interrogatories to Jury.—Negligence.*—In an action against a street railway company to recover damages on account of an injury to the plaintiff's horses, carriage and harness, it was not error for the court to refuse to submit interrogatories to the jury based upon the theory that if the plaintiff could have travelled some other street than the one on which the accident occurred, and thus have avoided meeting the cars, it was his duty to have done so, and his failure to do so was such negligence as to preclude a recovery.

SAME.—*Instruction to Jury.—Presumption of Negligence.*—Where, in such an action, the evidence clearly showed that the plaintiff made every effort to avoid the collision, but on account of the frightened condition of the horses he could not control them, an instruction requested by the defendant was properly refused to the effect that if the plaintiff could have seen the car approaching and he did not escape, and his property was injured, the law presumes either that he did not look, or if he did

look, that he did not heed what he saw, and that such conduct was negligence in itself.

SAME.—*Degree of Care to be Exercised by Defendant.*—An instruction to the jury in such action that the servants of the company were not required to stop their train unless it was necessary to do so to avoid the injury, but if they could see that a collision was inevitable or reasonably probable, then they should make all reasonable effort to avoid the injury, correctly stated the rule of law as to the degree of care required of the defendant.

SAME.—Those in charge of an engine upon a street car track upon seeing a team of horses near the track showing signs of fright must, in order to relieve the company from liability, heed the danger, slacken the speed, and, if necessary to avoid injury, stop the train.

SAME.—*Street Railway Crossings.—Degree of Care.*—The same rule of care governing travellers approaching railroad crossings does not apply to those approaching street railway crossings.

VERDICT.—*General.—Answers to Interrogatories. —Conflict Between.—Evidence.* —Answers to interrogatories will not control the general verdict unless said answers and general verdict are so conflicting that both can not stand, and the record must show this conflict beyond the possibility of being removed by any evidence that would have been admissible under the issues, or the general verdict must stand.

From the Delaware Circuit Court.

*C. E. Shipley, R. S. Gregory* and *A. C. Silverburgh,* for appellant.

*W. W. Orr, J. W. Ryan* and *W. A. Thompson,* for appellee.

NEW, J.—This was an action by the appellee against the appellant to recover damages on account of injury to appellee's horses, carriage and harness, caused by appellant's cars, on the 23d day of November, 1890.

A demurrer to the complaint for want of facts was overruled, and exceptions taken. Defendant filed an answer in general denial, and upon issues thus joined, a jury returned a general verdict for the plaintiff, assessing his damages at the sum of one hundred and ninety dollars. With their general verdict the jury returned answers to twenty-seven interrogatories submitted to them at the request of the defendant. Said interrogatories and answers thereto are as follows:

" 1st. Upon what street or avenue was the plaintiff trav-

elling at the time when the injury to his horses and other property occurred? A. Kilgore avenue.

" 2d. What was the width of the avenue at the point where the injury to his property occurred? A. Sixty feet.

" 3d. Upon what part of the avenue, at the point where plaintiff's property was injured, was the track of the defendant company's railway laid and placed? A. Near center.

" 4th. Upon which side of the railway track was the plaintiff driving at the time of the collision between his horse and the defendant's motor? A. East.

" 5th. What was the condition of the grounds east from where the plaintiff was driving, as to being open; and if open, state what obstructions, if any, were upon or in such grounds that prevented plaintiff from driving his carriage eastward away from the track of defendant's railway when its train was approaching? A. Open, and no obstruction.

"6th. At what distance was defendant's train from plaintiff when plaintiff first saw it. A. One hundred and fifty feet.

" 7th. Did not Cory E. Cropper notify the plaintiff that the street cars were coming toward plaintiff, and if so, at the time when said notice was given, how far was the train from the plaintiff? A. Yes, two hundred feet.

" 8th. Was not the defendant's train, at the time when Cropper notified plaintiff that it was coming, as much as two squares or more away from plaintiff, and if that be not the correct distance, then state how far it was away from plaintiff? A. No, about two hundred feet.

" 9th. Did not plaintiff, at the time he was driving his carriage on Kilgore avenue, know the railroad track then on the avenue was the track used by the defendant company in transacting its street railway business? A. Yes.

" 10th. Did the plaintiff not know, at and before he drove upon and along Kilgore avenue, on the day and at the time the collision between the defendant's train and his property occurred, that the defendant ran trains over and along her

lines of railway, in the city of Muncie, daily and frequently?
A. Yes, except on Sunday.

" 11th. Had the plaintiff not seen the cars of the defendant company frequently running over the lines of her road, in the city of Muncie, before the day on which the injury to his property occurred? A. Yes.

" 12th. Did not the plaintiff see and know, at and before the collision between the defendant's engine and his property, that the defendant had its railroad line upon Charles street, and that it connected with defendant's railroad line on Kilgore avenue by a circular curve from Charles street to its line on Kilgore avenue? A. Yes.

" 13th. Upon what street did the plaintiff first discover the defendant's train and cars, at the time when the accident and injury to his property occurred? A. Charles.

" 14th. Is not Elliott street 115 feet east of Kilgore avenue? and was it not on November 23, 1890, an improved street? A. Yes.

" 15th. Did not the defendant company stop her train at that street and take aboard passengers? and was not that train the same train that collided afterwards, on the same trip, with plaintiff's property? A. Yes.

" 16th. At what speed was the defendant's train running at the time and before it collided with the plaintiff's property? A. From four to six miles an hour.

" 17th. What noise, if any, did defendant's train or engine make as it approached Kilgore avenue, where plaintiff was? A. Rumbling noise.

" 18th. Was not the plaintiff warned and notified of the approaching train of defendant when the train was about 200 feet or more from him? A. Yes.

" 19th. Could not the plaintiff have driven through the open ground east from the railroad track on Kilgore avenue and thereby escaped a collision with the cars? A. Yes, if his team had not been frightened and thereby become uncontrollable.

" 20th. Was not plaintiff's horse that was injured and died afraid of steam engines and cars, and did not the plaintiff know that fact before the injury occurred ? A. To some extent, would throw up its head and squat at the approach of engine or cars.

" 24th. At what time in the day did the collision between defendant's train and plaintiff's property occur ? A. Between 3 and 4 o'clock P. M.

" 25th. What was the character of the day, as to its being fair or otherwise ? A. Fair.

" 26th. At what distance could the noise produced by defendant's train be heard, at the time and place of the collision ? A. Not over one square from point of collision.

" 30th. What damage do you assess in your general verdict against the defendant company for injuries done to plaintiff's horse, that is yet living ? and for what injuries to such horse do you assess such damages ? A. Fifteen dollars for injuries sustained by fright.

" 31st. What injury was done to plaintiff's horse, which he was driving to his carriage on the day of the collision ? and which horse is yet living ? State particularly the injury done and whether the same was done by defendant company. A. Ffteen dollars for injuries sustained by being frightened by engine and car approaching on defendant's street car line.

" 32d. What damages do you assess for injuries done to plaintiff's carriage ? A. Fifteen dollars.

" 33d. What damages do you assess against the defendant company for injuries done to the plaintiff's harness ? A. Eight dollars."

The defendant moved the court for judgment in its favor on the answers to the interrogatories notwithstanding the general verdict, and also filed a motion for a new trial. Each of said motions was overruled, and judgment given for the plaintiff on the general verdict in the sum of one hundred and ninety dollars and costs.

The Muncie Street Railway Company v. Maynard.

The appellant appeals and assigns as errors:

1st. The overruling of the demurrer to the complaint.

2d. The overruling of the motion for judgment on the answers to the interrogatories notwithstanding the general verdict.

3d. The overruling of the motion for a new trial.

The question raised by the demurrer is not discussed by counsel for appellant, and under the well settled rule it is not necessary for us to consider the same.

The answers to the interrogatories are not, in our judgment, so inconsistent with the general verdict as to control it, and the court did not, as we think, err in overruling said motion for judgment on the special findings.

The law in this State on the point in question is settled as laid down in Works Practice:

" Where the special finding of fact and the general verdict are so inconsistent that both can not stand, the former must control, otherwise the general verdict must stand." 2 Works Practice, section 861.

Answers to interrogatories will not control the general verdict unless said answers and general verdict are so conflicting that both can not stand, and the record must show this conflict beyond the possibility of being removed by any evidence that would have been admissible under the issues, or the general verdict must stand. *Adams* v. *Cosby*, 48 Ind. 153; *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412; *Brown* v. *Searle*, 104 Ind. 218; *Cox* v. *Ratcliffe*, 105 Ind. 374.

The court should not consider the evidence introduced in determining whether judgment should be rendered on the answers to the interrogatories. *Cox* v. *Ratcliffe, supra.*

But it is the duty of the court to uphold the general verdict if any evidence, admissible under the issues, could have been introduced that would maintain it.

The answers to the interrogatories in this case fail to show that the appellee was not rightfully upon said avenue, or

that his negligence in any way contributed to the injury of his property.

Among other reasons stated in appellant's motion for a new trial is the ruling of the court on certain questions of evidence, but counsel fail to discuss the questions thus raised, but simply call our attention to them, and ask that they be considered by this court.

The rule, as often stated, is that errors assigned and not argued are waived. *Tracewell* v. *Peacock*, 55 Ind. 572 ; *Griffin* v. *Pate*, 63 Ind. 273 ; *Goldsberry* v. *State, ex rel.*, 69 Ind. 430 ; *Yeakle* v. *Winters*, 60 Ind. 554 ; *Green* v. *Elliott*, 86 Ind. 53 (70). And in view of this rule we must pass these questions without deciding them.

Appellant also complains on account of the court's refusal to submit to the jury interrogatories numbered 21, 22, 23, 27, 28 and 29, which were prepared by appellant and furnished to the court.

Each of said interrogatories is founded upon the theory that if appellee could have travelled some other street than Kilgore avenue and thus have avoided meeting said cars it was his duty to have done so, and his failure to so do was negligence that would prevent him from recovering in this action. The court properly refused to submit said interrogatories to the jury. The appellee had a right to travel upon Kilgore avenue, and the fact that the appellant's railroad track was located thereon did not make it necessary for him to avoid using said street. Kilgore avenue was at that time, and for a long time prior thereto had been, a public thoroughfare and generally used by the travelling public.

If the appellee should have travelled some other or different street in order that he might avoid meeting appellant's cars, it would follow that all persons should for the same reason avoid using said avenue, and thus give to said street car company the exclusive use of the same.

If a person was driving a horse that he knew or had reason to believe would, at the sight of the engine and cars,

become frightened and unmanageable, then he would be guilty of negligence if he did not use reasonable precautions to avoid the same.

The appellee had frequently had his said horses close to steam engines, in fact within ten feet of them, and neither of said animals showed any great amount of fright, and on some occasions paid no attention to the cars whatever.

The evidence in this case discloses the following facts:

The appellant was, on the 23d day of November, 1890, the owner of and operating a street railway in the city of Muncie, Indiana, the same being located on Kilgore avenue and Charles street, near the center thereof and on a level with the surface of said avenue and street. Said avenue and street were public thoroughfares and used by the public as such.

Kilgore avenue runs in a northeasterly and southwesterly direction, and Charles street runs east and west, intersecting but not crossing said avenue. The connection of said railway line where said street intersects said avenue is by means of a curve to the south from said street. There are houses located on Charles street fronting north and south of said junction that obstruct the view along said street of a person travelling north on said avenue toward said junction. Said railway company operated its cars by steam engines called motors.

On the day above named the appellee, with his wife, his sister-in-law, and his child, was driving in his family carriage, drawn by two large horses, along said avenue on the east side of said railway track in a northern direction toward said junction at Charles street. It was on Sunday afternoon about 3 o'clock. Appellee knew that said street car line was located on said avenue and street, and that the same was connected by means of a curve to the south from said street, but he did not know that the cars were operated on Sunday.

When he had reached a point on said avenue about fifty

feet south of Charles street, he was notified by a man named Cropper that the street car was coming west on said street. At that time the car was about 200 feet away, moving along toward the junction, or curve, at the rate of from four to six miles an hour. Almost instantaneously with said notification appellee's horses noticed said engine and car and became frightened, commencing to lunge and back from first one side to the other. Appellee at once tried to turn them and drive east from said avenue into a vacant lot, but on account of their fright they were uncontrollable, and appellee was utterly unable to manage them. As the engine and car approached and came nearer to the horses they continued to show great fear, and finally, when the engine was within thirty or thirty-five feet of them, they swung violently to the left upon said track facing west, and continued to turn until they faced south on said track, where the near horse fell by the side of the track with one of its hind legs across the east rail, the other animal falling over the prostrate horse breaking some parts of the carriage and harness, and while in that position the engine ran upon said animal, so injuring it that it died in a few days.

The engineer could and did see the horses when he was 150 feet away. He testified that he always looked down the avenue when he started around the curve, and did so on this occasion ; that when he first saw the horses they were standing perfectly quiet, facing east, with the rear end of the carriage within five or six feet of the track, and he thought he could pass them and tried to do so. The fireman testified that he saw the team as the engine came along down Charles street. The evidence, taken as a whole, clearly shows that from the moment the horses first noticed said engine they were frightened, and by their actions showed they could not be managed by appellee. They at one time during their fright backed the carriage so close to the track, and in such a position that the front wheels were upon the track when the engine was seventy-five feet away.

The engine was equipped with a steam brake, called a vacuum brake, by the means of which the train could be stopped in travelling a distance of ten feet.

The evidence shows that the appellee hallooed and waved his hand to those in charge of the engine to stop the train after he saw he could not manage his team, but to no avail, as they came on until finally the injury occurred. We think the evidence shows that the engineer could have seen the helpless condition of appellee in time to have stopped his train and have avoided the injury. It was his duty to be constantly on the alert, and if he discovered appellee's property so situated that injury must follow unless he stop his engine, it was his duty to make all reasonable effort to do so. Those in charge of an engine upon a street car track are not required, or under obligations to immediately stop the engine upon seeing a horse or team by the side of the track that is manifesting fright, unless the situation and all the circumstances would cause a reasonable man to see and believe that damage to the property could not otherwise be avoided.

In the case of *Cornell* v. *Detroit, etc., R. W. Co.*, 82 Mich. 495, decided by the Supreme Court of Michigan, concerning the legal duties of those in charge of a street railway train, on discovering a horse near the track, manifesting fright, it is held that the servants in charge of an electric car are not bound to immediately stop the train when they see a horse near the track 300 or 400 feet away, showing signs of fright, but if they slacken their speed and finally stop before reaching the point where said animal is, they have discharged their duty.

We agree with the rule thus laid down, but it is very clear from the opinion that the servants of the company in charge of the train must, upon seeing the frightened animal, heed the danger, slacken the speed and, if necessary to avoid injury, stop the train.

Appellant complains on account of the court's refusal to

give instructions numbered 2, 3, 6 and 7, prepared and delivered to the court at the proper time. The court did not err in refusing to give these instructions. We will not set them out, as a statement of the substance or point made in them will answer the purpose.

It was asked in instruction numbered 2 to charge the jury that if the plaintiff could have seen the car approaching and he did not escape, but his property was injured, it is presumed by the law either that he did not look, or if he did look, that he did not heed what he saw, and that such conduct was negligence in itself.

The evidence clearly shows that the plaintiff made every effort to avoid the collision, but on account of the frightened condition of his horses, could not control them, and in view of this evidence said instruction was properly refused.

Instruction numbered 3 asked that the jury be charged that it was the duty of the traveller to use the same degree of care required of one approaching and about to cross an ordinary railroad crossing, and that the question of care at railway crossings is no longer, as a rule, a question for the jury. The question of care is exactly prescribed as matter of law, and that the traveller must listen for signals, etc.

The plaintiff in this case was not injured at a railway crossing, and was not attempting to cross said company's track at the time of said injury. The same rule applicable to ordinary railroad crossings would not apply to crossings of street railways. We think said instruction was properly refused in the light of the facts disclosed by the evidence.

The sixth instruction asked the court to charge the jury that the plaintiff should have travelled some other street for the purpose of avoiding said street cars, if there were other streets he might have travelled.

This instruction was properly refused, and what we have heretofore said on that subject disposes of this question.

The seventh instruction asked by appellant was given by the court after modifying it, charging the jury that the

servants of the railway company were not required to stop their train unless it was necessary to do so to avoid the injury, but if they could see that a collision was inevitable or reasonably probable, then they should make all reasonable effort to avoid the injury. This instruction was correct as modified and given.

We have examined all the instructions given by the court, and find that they stated the law correctly.

Appellant's counsel seem to urge that the appellee was required to use the same degree of care while travelling on said avenue along said street railway as would be required of one attempting to cross a railway track at an ordinary railway crossing. While we think he would be required to use ordinary care and caution, we can not agree with counsel on said proposition.

" The same degree of care is not required of persons passing along street railway tracks that is required of a person crossing, or walking, along the tracks of ordinary railroads. There is a solid foundation for this distinction, and to sanction a rule that would impose the same obligation upon persons using the tracks of a street railway as that which obtains where the plaintiff crosses or walks along an ordinary railroad track, would be to practically surrender a street to the railway company. This result principle and authority forbid." Elliott Streets and Roads, pp. 589, 590; *Mentz* v. *Second Avenue R. W. Co.*, 3 Abb. App. Dec. 274; *Lyman* v. *Union, etc., R. W. Co.*, 114 Mass. 83; Thompson Neg., p. 396, n. 1, and p. 399, n. 4. Compare *Kelly* v. *Hendrie*, 26 Mich. 255.

It is the duty of a street railway company to exercise ordinary care to prevent injury to persons lawfully travelling the street occupied by its track. Elliott Roads and Streets, pp. 585, 587.

The injury complained of was caused without any negligence on the part of appellee. Appellant's servants did see,

or could have seen, the danger in ample time to have avoided the injury which resulted solely from their negligence.

After careful examination of the errors assigned, we fail to find any error in the record.

The judgment is affirmed.

Filed Nov. 17, 1892.