## THE SUMMIT COAL COMPANY *v.* SHAW.

[No. 2,053. Filed September 23, 1896.]

MASTER AND SERVANT.—*Safe Place to Work Must be Provided.— Latent Defects.*—A servant has a right to assume, without looking for latent defects, that the master has done his duty in providing safe premises or working places for his servants, unless he has knowledge of the defects or can obtain such knowledge by the use of ordinary care. *pp. 13, 14.*

PLEADING.—*Complaint.—Damages for Personal Injuries.—Contributory Negligence.*—A general averment in a complaint in an action for personal injuries that plaintiff was free from contributory negligence is sufficient unless the facts pleaded in detail show that he was guilty of negligence notwithstanding such general averment. *p. 13.*

INSTRUCTIONS.—*Incomplete.*—The proper remedy for an alleged omission in giving an instruction, correct so far as it goes, is not by exception but by a request for an instruction supplying the omission. *p. 14.*

SAME.—*Contributory Negligence.* —On the issue of contributory negligence, in an action for personal injuries, it is error to instruct the jury that "contributory negligence on the part of the servant would not prevent him from recovering damages which he might otherwise be entitled to if by the exercise of ordinary care on the part of the master the consequences of such servant's negligence might have been avoided," when not limited to a case where the master's negligence was committed after he was aware of servant's danger. *pp. 14–17.*

From the Greene Circuit Court. *Reversed.*

*Emerson Short,* for appellant.

*C. E. Davis* and *W. V. Moffett,* for appellee.

REINHARD, J.—The appellee's complaint alleges that the appellant is the owner of and operating a coal mine near the town of Linton, in Greene county, Indiana, known as the Summit Coal Mine, and employs men therein, in the business and work of mining coal; that at the time of the injuries hereinafter mentioned, and long before, the appellee was an

employe of appellant in said mine for hire; that said mine was then and still is an underground structure consisting of a main shaft about eighty feet deep, from which lateral horizontal excavations are made in the coal stratum of said mine, constituting what are known as entries and rooms in said mine; that a main or chief entry runs from the bottom of said main shaft, and that southward from the main east entry run a number of side entries, among which is one known as the sixth south entry from the main east entry; that from said sixth south entry excavations in the coal stratum of said mine, from which coal is taken in mining, are extended eastward; that said excavations are known as rooms and constitute working places for miners who work in said mine, which rooms are designated by numbers; that the safety of miners working in said rooms requires that said rooms should run parallel, and that there should be left at the coal stratum a pillar or rib, from six to eight feet in thickness, in order to prevent said mine from caving in, and to prevent the explosions from the shots of powder with which the coal must be loosened and detached in mining, from blowing through and doing injury to miners working in adjoining rooms; that such ribs or pillars are left by the miners working in said rooms as the work of mining progresses therein, and as coal is taken therefrom; that it is the duty of appellant, and was its duty at the time of the injuries complained of, to keep in its employment at said mine a competent mining boss, whose duty it then was to visit and examine every working place in said mine, at least every alternate day while the miners of such place are or should be at work, and to see that safety in all respects is assured therein, and, if found unsafe, to order and direct that no person be permitted therein except for the purpose of making it safe; that it

was the duty of said mining boss and of the appellant to mark and lay out and plan the excavations of said rooms so that the pillars between such rooms should be and remain of the thickness and safety aforesaid, and to see that as the miners advance their excavations such pillars are maintained at the thickness aforesaid; and that it was obligatory on said mining boss and the appellant to perform all of said duties and preserve all of said precautions with reference to the room in which appellee was then on duty, and all of the rooms adjacent thereto; that at the time of the injuries mentioned, to-wit: on the 26th day of February, 1894, the appellee was sitting on a seat in a break-through or airway, made in the rib between rooms 13 and 14 in said sixth south entry, at a safe distance from a shot of powder which had just exploded, where he had been awaiting said explosion, and where he was in the line of his duty as laborer in said mine and employe of appellant, and without knowledge of the unsafe condition of the rib or pillar hereinafter mentioned, or that a shot was about to be made therein; that at said time, and for months prior thereto, appellant had in its employment a mining boss whose name was —————, but that said mining boss did not visit the said room 14, which was the room in which appellee was at work, and to which he had been assigned by appellant, nor any of the adjacent or adjoining rooms, each alternate day, or on any day; nor did he see that safety in all respects was assured in said rooms, or any of them; nor did he order and direct that no person, including the appellee, should be permitted in said room or rooms, except for the purpose of making it or them safe; nor did appellant perform, or cause to be performed, any of said duties; nor did said mining boss or the appellant see that the pillar or rib between said room 14 and room 15 was

maintained at the requisite thickness to prevent blasts of powder from blowing through and injuring miners in said rooms, but that the appellant and said mining boss negligently, unlawfully and willfully failed and refused to perform any of said duties, and negligently, willfully and unlawfully so laid out and planned the excavation of said rooms that the lines thereof, to-wit: the south line of room 14 and the north line of room 15, aforesaid, converged as the excavations in said rooms advanced, and said rib between them became dangerously weak and thin, to-wit: of the thickness of two feet and no more, and negligently, willfully and unlawfully permitted said lines of said rooms, as the excavations therein advanced, so to converge and the said rib to become so dangerously thin, as aforesaid; and negligently, willfully and unlawfully permitted said rib to be and remain thin and unsafe, as aforesaid, and well knowing it to be in said unsafe condition, negligently and willfully assigned to work in said room 15 an inexperienced miner, who had not sufficient experience to detect said thinness of said rib, or to know the dangers thereof if detected; that on the 26th day of February, 1894, while in the discharge of his duties as employe of appellant, in said room 15, said inexperienced miner drilled a hole in said rib and placed powder therein for the purpose of shooting down coal in the usual way, and, not knowing of the thinness of said rib, fired said shot and exploded said powder; that by reason of the unsafe condition and thinness of said ribs, as aforesaid, and by reason of the aforesaid defaults of said mining boss in allowing it to become and remain so thin and in such unsafe condition, the explosion of said powder broke through said rib and against and upon the appellee while sitting in said break-through or airway, and with great force and

violence threw and forced against him large lumps of coal and timbers of said mine, all without any fault or want of care on his part, and breaking his left arm, greatly bruising and lacerating his face, and breaking his ribs, etc., describing the injury and stating the expenses incurred for treatment, etc.

To this complaint the appellant demurred, and the overruling of the demurrer is assigned as error.

The complaint is not open to the objections urged against it. It was not necessary to aver that the appellee did not know that a shot was about to be fired in the room adjoining that in which he was seated, and that therefore he had, and could have had, no knowledge of the impending danger. There is a general averment, as we have seen from the complaint, of the freedom of the appellee from contributory fault. This is sufficient, unless the facts pleaded in detail show that he was guilty of negligence, notwithstanding such general averment. *Chicago, etc., R. R. Co.* v. *Smith,* 6 Ind. App. 262. No question is raised as to the sufficiency of the complaint on the subject of the assumption of the risk, and we are not required therefore to go into that question.

No other objections to the complaint are pointed out.

The overruling of appellant's motion for a new trial is assigned as error. It is insisted that the court gave erroneous instructions, the giving of which was made a cause in the motion for a new trial.

Instruction No. 3 1-4 is complained of as not stating the law correctly. In it the jury was instructed that a servant is not bound to inspect the premises for latent defects, and where he has no actual knowledge he is chargeable with a knowledge of such defects only as would be reasonably apparent, without inspection, to one who was giving due and reasonable atten-

tion to the duties of his employment; and such servant has a right to assume, without looking for latent defects, that the master has done his duty in providing safe premises or working places for his servants, unless he had or could have obtained knowledge to the contrary, by reasonable observation. The instruction states the law correctly. *Island Coal Co.* v. *Risher,* 13 Ind. App. 98.

It is also complained that this instruction is not full enough. If this be true, it being correct as far as it goes, the appellant should have requested further instructions upon this point so as to meet its view of the law. *Keller* v. *Reynolds,* 12 Ind. App. 383.

The next instruction to which objection is made is as follows: "3 1-2. Contributory negligence on the part of the servant would not prevent him from recovering damages which he otherwise might be entitled to if by the exercise of ordinary care on the part of the master the consequences of such servant's negligence might have been avoided."

The general rule is well settled that contributory negligence of the plaintiff will defeat an action for damages sustained by him on account of the negligence of the defendant. There is, however, one well recognized exception to this rule, viz: when the contributory negligence is not contemporaneous and only a remote cause of the injury, the plaintiff can recover, if the defendant, by the exercise of ordinary care, might have avoided the injury. A recent authority states the doctrine on this point as follows: "Although contributory negligence may exist, yet it will not disentitle the injured party from recovery, if, by the exercise of ordinary care on the part of the defendant, the consequences of such contributory negligence might have been avoided." Bailey Master's Liability, p. 445. The learned author, in support of the text,

makes liberal quotations from the decisions of courts of the highest standing, from which we take the following: "Although the rule is that, if the defendant be shown to have been guilty of negligence, the plaintiff cannot recover if he himself be shown to have been guilty of contributory negligence which may have had something to do in causing the accident, yet the contributing negligence on his part would not exonerate the defendant, and disentitle the plaintiff from recovering, if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the plaintiff's negligence." *Inland, etc., Coasting Co.* v. *Tolson,* 139 U. S. 558.

"A remote fault in one party does not of course dispense with care in the other. It may even make it more necessary and important, if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demand this; and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accident are to a greater or less extent incident to human affairs. Preventive remedies must therefore always be proportioned to the case in its peculiar circumstances to the imminency of the danger, the evil to be avoided, and the means at hand of avoiding it. And herein is no novel or strange doctrine of the law; it is as old as the moral law itself, and is laid down in the earliest books on jurisprudence." *Isbell* v. *New York, etc., R. R. Co.,* 27 Conn. 404, 71 Am. Dec. 78.

"An apt illustration of the rule," says Judge Bailey, "is found in *Austin* v. *New Jersey Steamboat Co.,* 43 N. Y. 73, 3 Am. Rep. 663. The facts were that a barge of the plaintiff became grounded in the Hudson river. A

steamboat owned and manned by the defendant col-
lided with such barge, through the negligence of the
officers in charge, by reason of which the barge was
sunk. The defendant's boat, while out of the channel,
came in contact with some obstacle, which shoved her
bow directly towards the barge, and then, becoming
unmanageable, ran into the barge. It was claimed by
the defendant that the negligence of the plaintiff con-
tributed to the injury on two grounds: First, that
the tow was in the wrong place, and had committed
the same fault alleged against the defendant, in en-
deavoring to sail east of the actual channel; and, sec-
ond, was guilty of negligence in running aground,
which contributed to the injury. The tow was
grounded several hours before, and was entirely help-
less at the time of the accident. The court held: 'The
St. John [that being the defendant's boat] and all
other passing vessels were bound to regard the actual
situation of the tow, and to exercise reasonable care
to prevent injury. It cannot be said that plaintiff's
negligence contributed to the injury. Notwithstand-
ing the previous negligence of the plaintiff, if, at the
time when the injury was committed, it might have
been avoided by the defendant by the exercise of rea-
sonable care and prudence, an action will lie for the
injury.'" Bailey Master's Liability, pp. 448, 449.

The same doctrine is declared by the Supreme
Court of Ohio, in *Cincinnati, etc., R. W. Co.* v. *Kassen,*
49 Ohio St. 230, 31 N. E. 282, 16 L. R. A. 674.

Our own Supreme Court has also recognized the
principle alluded to. *Evansville, etc., R. R. Co.* v. *Hiatt,*
17 Ind. 102; *Evans* v. *Adams Express Co.,* 122 Ind. 362,
7 L. R. A. 678.

It will be seen by an examination of the cases re-
ferred to that an instruction of the character of the
one complained of in the present case is proper only

upon the theory that the defendant's negligence was committed after it became aware of the plaintiff's danger. Had the instruction been properly limited to that kind of a case, under the evidence, it might have been sustained. *Indiana Stone Co.* v. *Stewart*, 7 Ind. App. 563. But it was not so limited. In the case just cited an instruction much like the one under consideration was condemned by this court. It was there said: "To say that if the master, by reasonable care, could have prevented the injury, he shall respond in damages, notwithstanding the contributory negligence, would be to nullify the whole doctrine, for the master would not, in any event, be liable, unless reasonable care upon his part would have prevented the injury."

The court having failed to qualify the instruction so as to bring the case within the exception to the general rule, we must hold that the giving of it in the form in which it was given constitutes reversible error.

Judgment reversed, with directions to grant appellant's motion for a new trial.