# Hammond, Whiting & East Chicago Electric Railway Company v. Eads.

[No. 4,511.   Filed January 15, 1904.]

STREET RAILROADS.—*Collision with Vehicle.*—*Complaint.*—A complaint in an action against a street railroad company alleging that plaintiff was driving along a street north of defendant's tracks, near a cross street, and when he had arrived within ten or twelve feet of the cross street, intending to drive on said street, his horse took fright at the rapid approach of one of the defendant's cars about 200 feet east of him, and ran away, wheeling toward defendant's track, running along the track in an unmanageable condition for about seventy-five feet, where defendant's car caught up, and carelessly and negligently ran into and against plaintiff's wagon and horse, breaking the wagon, injuring the horse, and injuring and crippling plaintiff, states a cause of action.   *pp. 250, 251.*

NEGLIGENCE.—*Pleading.*—*Contributory Negligence.*—*Surplusage.*—An averment in a complaint in an action for personal injuries that plaintiff was free from contributory negligence is unnecessary, but does not render the complaint bad, and will be regarded, at most, as mere surplusage.   *p. 251.*

SAME.—*Collision with Street Car.*—*Position of Peril.*—*Evidence.*—Evidence in an action against a street railroad company that the street car which struck plaintiff's wagon and horse and caused the injury was 200 feet or more away when plaintiff unhitched his horse and stepped into the wagon, and before plaintiff could reach the lines the horse jumped and threw him down and ran along defendant's track, drawing the wagon, swerving from one side to the other, and the car caught up with the wagon and carelessly ran against it, causing the injury, brings the case within the rule that where one person sees another in peril, from which he is unable to extricate himself, it is the duty of such person so to act as not to increase the peril.   *pp. 251-254.*

From Lake Circuit Court;   *W. C. McMahan*, Judge.

Action by James S. Eads against the Hammond, Whiting & East Chicago Electric Railway Company.   From a judgment for plaintiff, defendant appeals.   *Affirmed.*

*J. B. Peterson* and *Peter Crumpacker*, for appellant.

*J. K. Stinson, J. M. Stinson* and *A. F. Knotts*, for appellee.

HENLEY, C. J.—Appellee began this action against appellant to recover damages sustained by him, and caused by the alleged negligence of the appellant.

The errors relied upon for a reversal of this judgment are:    (1) That the trial court erred in overruling appellant's demurrer to the complaint; (2) that the trial court erred in overruling appellant's motion for a new trial; (3) that the trial court erred in overruling appellant's motion for judgment in its favor on the special findings of the jury notwithstanding the general verdict.

It is averred in the complaint that the appellant is a corporation operating an electric railway in the city of Hammond, Indiana, upon a street in said city known as State street, and that it propels its cars by means of electric power; that the appellee was, on the 6th day of July, 1901, driving his horse and wagon along said street north of appellant's tracks near Sohl street, and that when appellee had arrived within ten or twelve feet west of Sohl street, intending to drive north on said street, his horse took fright at the rapid approach of one of appellant's cars which was approaching appellee from the east, and was at the time about 200 feet east of him; that appellee's horse, on account of such fright, ran rapidly, and shied to the north, and the wagon in which appellee was riding struck violently against a pole standing at the corner of State and Sohl streets, and the horse became unmanageable, and reared, and fell back toward the wagon, and wheeled toward appellant's track, running along the track, and that during all of said time appellee's horse was unmanageable; that the horse continued to run along said track in such unmanageable condition for about seventy-five feet, where the appellant's car caught up with the wagon, and said car was carelessly and negligently run into and against appellee's wagon and horse, and the said wagon was broken, the horse injured, and appellee

knocked out of his wagon, and thereby severely and permanently injured and crippled.

We think the complaint clearly avers that appellee's injury was the result of appellant's negligence, and that this is all that it was necessary to show in the complaint. The averment that appellee was not guilty of contributing to his injury was unnecessary, and the fact that the complaint contains such an averment does not render it bad; such an averment being immaterial and regarded, at the most, as merely surplusage.

It is contended by counsel for appellant that the evidence does not show that the appellant was guilty of any negligence whatever, and that the evidence shows that the appellee was guilty of contributory negligence and that the injury was the result of an unavoidable accident. It is shown by the evidence that appellant's car which struck appellee's wagon and horse and caused the injury complained of was 200 feet or more east on State street from the place where appellee's horse and wagon was hitched at the time he started to get into the wagon; that when appellee unhitched his horse and stepped into the wagon, and before he had or could reach the lines, the horse jumped and threw him down, and the horse started with the wagon and appellee along the side of appellant's track; and that the horse was unmanageable and was drawing the wagon along and near the track, swerving from one side to the other, and the fact that the horse was unmanageable and the danger that appellee was in was fully known and apparent to the motorman who had charge of the car which struck appellee's wagon. It is further shown by the evidence that the motorman, by the exercise of due care, under all the circumstances, might and should have prevented the injury. The evidence also shows that appellee's negligence, if any, did not contribute to his injury. He could not be charged with negligence, under the circumstances shown by the evidence, after the

horse had become unmanageable.    This brings the case fully within the rule that where one person sees another in a position of peril, from which he is unable to extricate himself by the exercise of reasonable care, it is the duty of such person so to act as not to increase the peril, and if he does so act in a manner which increases the danger, with full knowledge of the facts, he will not be relieved from the damages which might result from such negligent acts. *Citizens St. R. Co.* v. *Damm,* 25 Ind. App. 511, and cases cited.

In the case at bar the evidence fairly shows that there was ample time, after the motorman saw the impending danger in which appellee was placed, to have stopped the car and to have avoided the injury.    The evidence does not show, as counsel for appellant contend, that the horse drawing appellee's wagon was trotting along the street at a safe distance from the track, and that there was no indication that the horse was frightened and that the vehicle would, by the action of the horse, be suddenly drawn upon the track.

In *Muncie St. R. Co.* v. *Maynard,* 5 Ind. App. 372, the law applicable to a state of facts, such as was proved in this case, was stated by this court in the following language:    "We think the evidence shows that the engineer could have seen the helpless condition of the appellee in time to have stopped his train and have avoided the injury.    It was his duty to be constantly on the alert, and if he discovered appellee's property so situated that injury must follow unless he stop his engine, it was his duty to make all reasonable effort to do so.    Those in charge of an engine upon a street car track are not required, or under obligation, immediately to stop the engine upon seeing a horse or team by the side of the track that is manifesting fright, unless the situation and all the circumstances would cause a reasonable man to see and believe that damage to the property could not otherwise be avoided."

In the case of *Terre Haute Electric R. Co.* v. *Yant,* 21 Ind. App. 486, 69 Am. St. 376, this court adopted and approved the doctrine of the supreme court of North Carolina in *Doster* v. *Charlotte St. R. Co.,* 117 N. C. 651, 23 S. E. 449, 34 L. R. A. 481, that court saying: "Where a horse is being driven or is running uncontrolled along a highway parallel to a railway of any kind, though it give unmistakable evidence by its movements that it is alarmed at an approaching train or car, the engineer or motorman in charge is not negligent in failing to diminish the speed, unless the animal is actually on the track in his front, or he has reasonable ground to believe that in its excited state it is about to go or may go upon it, so as to cause a collision."

We believe that the jury in this case had a right to conclude from all the facts that the motorman in charge of the car, and having in plain view the unmanageable horse, must have had, as a reasonably prudent man, reasonable grounds to believe that the horse, in its unmanageable condition, swerving on and off of the track, was about to or might go upon the track and cause a collision.

The rule as stated in Booth, Street Railway Law, §298, and which is applicable to the facts produced in this case has been adopted as a law in this State. It is stated as follows: "And, for obvious reason, companies which have been duly licensed, and, therefore, have as much right to run their cars in the streets as others have to drive through them with their horses and vehicles, can not ordinarily be held responsible for horses taking fright at the appearance, movement or noise of the cars. If a horse takes fright at an approaching car, and, because the car is not stopped, * * * becomes unmanageable and runs away, injuring the driver or others, the company is not liable, unless the conduct complained of, in the management of the car, is attributable only to a wanton or malicious disregard for the safety of the driver or other travelers upon the street.

*  *  *  To the extent that travelers, whether in cars, on foot, or in private vehicles, have the right to proceed without unnecessary interruption or delay, the rights of all are equal, and the law makes no distinction between the vehicles used or the means employed. No other rule would be reasonable or practicable; for if drivers, motormen, or gripmen were required to stop their cars, slacken their speed, or omit or discontinue necessary signals, upon which the safety of others depends, because timid horses may become frightened, or already manifest symptoms of fear, not indicating imminent peril, street railway service would be so materially embarrassed by numerous delays as to defeat the purpose for which such franchises are granted, and the dangers to the general public, for whose protection warnings are given, would be greatly enhanced."

The facts in this case, we think, justified the jury in concluding that appellee was in imminent peril, and that the motorman in charge of the car must have known of appellee's peril.

What we have heretofore said disposes of appellant's contention that the injury was the result of an unavoidable accident.

The facts found by all of the answers to the interrogatories are not in conflict with the general verdict, and a careful examination of all of the instructions given to the jury convinces us that no error was committed by the trial court in this regard.

The judgment is affirmed.