# INDIANAPOLIS STREET RAILWAY COMPANY *v.* SCHMIDT.

[No. 4,525. Filed June 30, 1904. Rehearing denied November 29, 1904. Transfer denied March 31, 1905.]

1. STREET RAILROADS.—*The "Look and Listen" Rule.—Whether Applicable.*—The "look and listen" rule, as applied to persons crossing the tracks of a railroad at a highway crossing, is not applicable to persons crossing a street car track in a city. p. 206.

2. APPEAL AND ERROR.—*Street Railroads.—Negligence.—Contributory. Jury.*—The verdict of the jury that plaintiff was not guilty of contributory negligence is conclusive on appeal, where it was shown that plaintiff was driving a load of furniture along the street and without looking back attempted to cross the track, when he was injured, and where it was also shown that the motorman saw or could have seen plaintiff's situation in time to avoid a collision. p. 207.

3. NEGLIGENCE.—*Contributory.*—The negligence of plaintiff is not contributory unless it is the proximate cause of the injury. p. 207.

4. SAME.—*Proximate Cause.—Question of Fact.*—What is the proximate cause of an injury is primarily a question of fact for the jury. p. 207.

5. SAME.—*Intervention of Responsible Agent.—Effect.*—The intervention of a responsible agent breaks the line of causation and renders such agent alone liable for the results. p. 208.

6. SAME.—*Contributory.—Street Railroads.*—A person who, without legal excuse, goes onto a street car track so close in front of a car that the motorman can not avoid a collision, is guilty of contributory negligence. p. 209.

7. SAME.—*Liability of Intervening Responsible Agent.*—A motorman 200 feet away, who, with full knowledge of plaintiff's danger on a car track, runs his car against plaintiff, is a responsible intervening agent whose negligence renders his master liable. p. 209.

8. SAME.—*Anticipation of Defendant's Negligence.—Effect on Original Wrongdoer.*—Where the intervention of an independent agent should have been foreseen, the original wrongdoer is not relieved from the consequences of his negligence. p. 210.

9. STREET RAILROADS.—*Rights at Crossings.*—A street railroad company has no greater rights at street crossings than any other user of the streets, and its use of such crossings must be exercised with due regard to the equal rights of others. p. 210.

10. SAME.—*Occupancy of Track by Others.—Presumption of Collision.*—It will not be presumed that a street railroad company will unnecessarily run its car against one crossing its track. p. 210.

Indianapolis St. R. Co. *v.* Schmidt—35 Ind. App. 202.

11. NEGLIGENCE.—*Proximate Cause.—Street Railroads.*—The negligence of a street railroad company, which, with full knowledge of plaintiff's dangers, and being able to avoid a collision, negligently refuses to stop its car, is the proximate cause of injuries caused by such collision. p. 211.

12. SAME.—*Contributory.—Avoidance of by Defendant.*—Where the injurious consequences of plaintiff's negligence could have been avoided by the defendant by the exercise of ordinary care, such defendant is liable for the injury caused. p. 211.

13. STREET RAILROADS.—*Running Down Persons on Track.—Liability.* A street railroad company can not, without liability, run down persons on its track. p. 213.

14. SAME.—*Duty to Observe Persons on Track.—Negligent Failure.— Liability.*—A street railroad company is liable for its negligent failure to see persons on its track and its failure to avoid their injury, although such persons may be negligent in being upon such track. It is not necessary that it shall see such persons on such track or know that they will remain there. p. 214.

15. SAME.—*Wilful Injury.*—Where the charge is wilful injury by a street railroad company, it is necessary to show that such company saw plaintiff on its track and had sufficient reason to think he would remain upon the track. p. 214.

16. SAME.—*Persons on Track.—Rules Applicable.*—The rules applicable to steam railroads in cases of persons on or using their tracks are not applicable to street railroads. p. 214.

17. SAME.—*Persons on Track.—Duty to Observe.*—It is the duty of a street railroad company to anticipate and keep a lookout for people on its tracks. p. 215.

From Superior Court of Marion County (61,240); *Vinson Carter,* Judge.

Action by Henry C. Schmidt against the Indianapolis Street Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. Winter, Clarence Winter* and *Will H. Latta,* for appellant.

*W. N. Pickerill* and *Miller, Elam & Fesler,* for appellee.

ROBY, P. J.—Action by appellee to recover damages for personal injuries. Verdict and judgment for $300.

The sole question argued is whether appellee's own acts and omissions are of such quality as to bar recovery on the ground of contributory negligence.

The charge made by the amended third, fourth and fifth paragraphs of complaint, upon which judgment depends, is that appellant negligently ran one of its street cars against appellee, who was driving a team and wagon across a street in Indianapolis upon which appellant's tracks were laid. The negligence charged was in running the car at an excessive speed without signal. It is averred in the fourth paragraph that appellant was on August 3, 1900, a corporation operating a street railway system in the city of Indianapolis, and along South street, upon which there was a double track; that the part of said street at which the plaintiff received his injury was in the business part of said city, and much frequented and used; that he was driving a team hitched to a wagon which was heavily loaded, and could move only slowly; that he drove across appellant's tracks, and when almost over was struck by one of its street cars, negligently run at a dangerous rate of speed, to wit, twenty miles an hour, without the making of any effort to check or stop the same so as to prevent the collision with said wagon, and without sounding any gong or giving any signal. "And plaintiff avers that after he started across said tracks, and his intention so to do was apparent, and after his team and wagon were upon said south track of said railway line, defendant's employes, acting within the scope of their employment, and operating said car approaching from the west, had they exercised reasonable care and diligence could have easily seen plaintiff, team and wagon, and known his purpose, and controlled and stopped said car, with appliances furnished for that purpose, in time to have prevented any collision with the wagon upon which plaintiff was riding, and avoided any injury to plaintiff, but, notwithstanding," etc. They are averred negligently to have run said car at the rate of twenty miles an hour, without attempting to control it, against the wagon, inflicting said injuries.

The fifth paragraph is substantially identical with the fourth, except that the failure of the motorman to stop the

car after discovering appellee's peril is attributed to the neglect of appellant properly to equip its car.

The facts developed on the trial were to the effect that appellee was driving a span of mules, hitched to a heavy wagon used to haul furniture, and loaded at the time with seven sideboards which he was taking to a freight-house. The sideboards were higher than his head. He was sitting on the driver's seat, covered by a fixed umbrella. South street intersects Senate avenue at right angles. Appellee drove along the south side of South street until he reached Senate avenue, when he turned north and started across the street and car tracks. He had driven along the south side of South street after making the turn from Missouri street, a distance of 500 feet. When he came upon South street he looked both east and west for cars, but saw none. When he had traversed about half the distance between Missouri street and Senate avenue, and was about 250 feet from the point of collision, he again looked to the west around the side of his wagon, but saw no car. He then drove on a slow trot to Senate avenue, and turned across the car track on a curve, without again looking, slowing down to a walk. The wagon when nearly across was struck by a car coming from the west at the average rate of sixteen miles an hour, and without signals until very near the wagon, when the bell was rung. The accident occurred in the daytime. The street car came up behind the wagon, and had it in view two blocks before the collision. The wagon was driven near the south rail of the track upon which the car was running. After it turned at Senate avenue, it was driven, as the jury found in answer to interrogatories, twenty-seven feet before the collision, at the rate of two miles an hour, so that the car must have been over two hundred feet away when appellee's peril became apparent. That he was in danger was due to the high rate of speed at which the car was being run, and, knowing that, and the condition under which appellee was proceeding to cross, the answer of the jury that the danger

was evident to the motorman, in the exercise of his faculties, in time to have checked the speed of the car and avoided the collision, is not without support in the evidence. Appellee's view to the west was cut off by the load on his wagon.

The questions for decision, as stated by appellant, are: "(1) Was the appellee negligent in crossing the tracks of the appellant? (2) Did that negligence contribute to his injury?" The same questions of law are involved in each error assigned, and the discussion of those questions reaches the merits of the case.

1. Whether appellee was guilty of contributory negligence in crossing the track as he did, depends upon whether the strict rules which require one about to go over a steam railroad track at a highway crossing to look and listen for approaching trains is applicable to one about to cross a much-traveled street, along which an electric street railway is operated. Appellee drove north on Missouri street to South street, and then turned east, at which time he looked west along the car track. About 250 feet from the point of collision he leaned to the north and looked along the side of his load for an approaching car, after which he drove 250 feet further at the rate of four miles an hour, then turned to cross the tracks, and was not in a position to see the approaching car, without leaning over, until the front end of his wagon had swung far enough around so that the driver's seat was substantially parallel with the tracks.

The author of a recent work on railroad law, after stating the "look and listen" rule, discusses the question now under consideration, as follows: "These rules do not fully apply to such parts of interurban railroads laid in highways or of ordinary street railways as are in populated communities. The crossing in this case is a crossing of two highways of the same kind. The railway is here using one of these highways lengthwise, and it is also being used at the same time and in a similar way by other vehicles. The person approaching the track from the cross street has to look out

not only for the electric cars, but for ordinary vehicles. He can not, as in the case of a through railroad, concentrate his attention on the railroad track. His safety may be endangered by a vehicle coming up from any part of the highway. The railroad car is also under easy control and can be readily and quickly stopped. Its rate of speed in populated districts is generally moderate. There is often no substantial risk in crossing in front of one approaching and near at hand. There is not the same danger in stopping a horse at the edge of the track that attends stopping one at the edge of a track used for fast and heavy trains. Hence the absolute stop, look, and listen rule is nowhere applied to street railway crossings in cities." Baldwin, American Railroad Law, p. 415.

That the "look and listen" rule is not applicable to those passing over car tracks laid in a city street has been repeatedly decided in this State: *Muncie St. R. Co.* v. *Maynard* (1892), 5 Ind. App. 372; *Citizens St. R. Co.* v. *Abright* (1896), 14 Ind. App. 433; *Citizens St. R. Co.* v. *Damm* (1900), 25 Ind. App. 511; *Marchal* v. *Indianapolis St. R. Co.* (1901), 28 Ind. App. 133; *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Evansville St. R. Co.* v. *Gentry* (1897), 147 Ind. 408, 37 L. R. A. 378, 62 Am. St. 421.

2. The verdict is therefore conclusive, and the judgment will have to be affirmed.

3. The same result follows the adoption of appellant's hypothesis; *i. e.,* that appellee was negligent in attempting to drive across the tracks without having looked both ways immediately before so doing. Negligence, to prevent recovery by the plaintiff, must contribute to the injury complained of. It is not contributory unless it is the proximate cause of the injury. Beach, Contrib. Neg. (3d ed.), §§24, 33; 1 Thompson, Negligence (2d ed.), §46; Baldwin, American Railroad Law, p. 425.

4. The question of proximate cause is the same whether

it relates to the negligence of the plaintiff or defendant, and in either case it is primarily a question of fact for the jury. *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308. The subject is not a new one. Among other cases in which it has been considered is *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199, which was decided upon facts substantially as follows: The gas company was notified that gas was escaping from its pipes upon certain premises, and was requested to cut off the supply by closing a valve provided for that purpose, and under its exclusive control. This it failed to do, and it was conceded that such omission was actionable negligence on its part. The owner of the building employed the plaintiff, a plumber, to locate and remedy the defect in the pipes through which the gas escaped, and while searching for such defect he was injured by an explosion of escaped gas. The Supreme Court held that the negligence of the gas company was not the proximate cause of the injury; that the injury could not have occurred without some agency acting upon the loose gas, and that therefore but for such agency such injury had not been; and, it not being shown by the complaint that the agency was one for which the defendant was responsible, that pleading was held insufficient.

In *New York, etc., R. Co.* v. *Perriguey* (1894), 138 Ind. 414, the facts considered were that the railway company negligently required its engineer to operate a locomotive, the headlight of which was defective. The engineer might have put in a hand lamp before the reflector and thereby made it effective. The court held that the negligence of the company in failing to provide a headlight was a condition or remote cause, but not the proximate cause, of the injury, which was the negligence of the engineer in failing to use the hand lamp, and that his negligence was that of an independent responsible person for which the company was not responsible.

5. The rule that an intervening responsible agent cuts

off the line of causation from the original negligence has been many times recognized. *Enochs* v. *Pittsburgh, etc., R. Co.* (1896), 145 Ind. 635; *Claypool* v. *Wigmore* (1904), 34 Ind. App. 35, and authorities cited.

"Those traveling along a street on which a street railway is in operation have as good a right to use the street where the tracks are laid as to use any other part of it, provided they act with due regard for the convenient and safe movement of the cars upon them. These must also be run with due regard for their safety. The motorman must be on the constant watch for teams or cyclists turning upon the track, and keep his car under such control as to be able to slacken speed or come to a stop should their safety seem reasonably to demand it. He is not, however, bound to anticipate that any one will suddenly turn from a position of safety, and drive in front of the car in such a way as to risk a collision." Baldwin, American Railroad Law, p. 421.

6. Had the approaching street car been in such proximity as that the act of appellee in turning across the track amounted to a casting of himself in front of it, then such negligent act would be the clear proximate cause of the injury, and bar him from recovery. *Moran* v. *Leslie* (1904), 33 Ind. App. 80; *Citizens St. R. Co.* v. *Helvie* (1899), 22 Ind. App. 515; *Kessler* v. *Citizens St. R. Co.* (1898), 20 Ind. App. 427.

7. But a car 200 feet away from a street crossing, the motorman of which has or should have full knowledge of the situation, puts another element into the question. If the motorman of such car chooses to run it against the wagon, his negligence in so doing is that of an independent intervening agent, and none the less so because the defendant is responsible therefor. The facts of the case at bar call for the application of the doctrine much more strongly than did those considered in *McGahan* v. *Indianapolis Nat. Gas Co., supra,* and *New York, etc., R. Co.* v. *Perriguey, supra.*

It might have been contended with some plausibility in those cases that the intervening agency ought to have been anticipated.

8. If the circumstances are such that the intervention of the independent agent ought to have been foreseen, then such intervention does not operate to release the original wrongdoer from the consequences of his negligence. 1 Thompson, Negligence (2d ed.), §§54, 58; *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583, 590, 6 L. R. A. 193; *Reid* v. *Evansville, etc., R. Co.* (1894), 10 Ind. App. 385, 396, 53 Am. St. 391. "The plaintiff had the right to assume that the defendant would exercise ordinary care and diligence to prevent an accident of this character. Even if established, the negligence complained of did not, in any legal sense, contribute to the accident." *Mapes* v. *Union R. Co.* (1900), 67 N. Y. Supp. 358, 361.

9. "At highway crossings a street car has no paramount right as against any other vehicle approaching on the cross-street. The right attaching to each is equal and must be exercised with due degard to that attaching to the other, and so as not to interfere with or abridge it unreasonably. It is not necessarily the duty of the driver of an approaching team to wait until the street car has passed, nor is it necessarily his right to push on and cut off its advance. Each party must act reasonably under all the attending circumstances." Baldwin, American Railroad Law, pp. 416, 417.

10. It is not to be anticipated that a street car which can be readily stopped will be unnecessarily run against a vehicle passing over the track. If the motorman were suing the driver of the wagon for damages on account of the collision, counting upon the negligence of the latter in driving upon the track without looking, it would undoubtedly be a complete defense to show that the cause of the accident was the motorman's own deliberate act in unnecessarily bringing about the collision. One of the conditions would be found in the presence of the wagon on the track, but such condition

would not be the proximate cause of a collision, the blame for which rested entirely upon the motorman.

11. That the negligence of the plaintiff ceases to be the proximate cause of the injury when the defendant has opportunity to prevent it, and, with knowledge of the exposed condition of the plaintiff, negligently refuses to do so, is well settled in this State. Where the defendant's negligence continued after the plaintiff was under its car wheels, his negligence in being upon the track at the moment of collision ceases to be proximate. *Citizens St. R. Co.* v. *Hamer* (1902), 29 Ind. App. 426; *Cleveland, etc., R. Co.* v. *Klee* (1900), 154 Ind. 430. The driver of an express wagon, who sees a man standing on a street crossing, and has reasonable ground to apprehend that he is unconscious of his imminent danger, is liable for driving against him, notwithstanding his antecedent negligence in so placing himself. *Evans* v. *Adams Express Co.* (1890), 122 Ind. 362, 366, 7 L. R. A. 678.

12. " 'Although contributory negligence may exist, yet it will not disentitle the injured party to a recovery, if, by the exercise of ordinary care on the part of the defendant, the consequences of such contributory negligence might have been avoided.' * * * 'It can not be said that plaintiff's negligence contributed to the injury. Notwithstanding the previous negligence of the plaintiff, if, at the time when the injury was committed, it might have been avoided by the defendant by the exercise of reasonable care and prudence, an action will lie for the injury.' " *Summit Coal Co.* v. *Shaw* (1896), 16 Ind. App. 9, 14, 16.

"It is sound doctrine, strongly entrenched by the authorities, that when one person sees another in danger or peril, from which he is unable to extricate himself with reasonable care and prudence, it is the highest duty of such person so to act as not to increase the peril, and, if he does act in a manner to increase the danger, with a full knowledge of the facts, it is negligence, for which he may be required to re-

spond in damages." *Lake Erie, etc., R. Co. v. Juday* (1898), 19 Ind. App. 436, 451.

In a slightly later case (*Dull* v. *Cleveland, etc., R. Co.* [1899], 21 Ind. App. 571) the court said: "By this contention, appellant seeks to invoke the doctrine that though a person may have subjected himself to injury by his own negligence, yet he may recover for such injury, if the person inflicting it could have avoided it after discovering his danger, or if he failed to use ordinary care." And after repeating the paragraph above quoted from *Lake Erie, etc., R. Co.* v. *Juday, supra,* concluded as follows: " 'Perhaps a better expression of this rule is, that although the plaintiff has negligently exposed himself or property to an injury, yet if the defendant, after discovering the exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages.' "

In *Elwood, etc., St. R. Co.* v. *Ross* (1901), 26 Ind. App. 258, 266, the proposition quoted from *Lake Erie, etc., R. Co.* v. *Juday, supra,* was repeated and approved. Again in *Citizens St. R. Co.* v. *Damm* (1900), 25 Ind. App. 511, the court said: "The jury found that there was ample time for the motorman to have stopped the car after seeing, or after he was bound to see, the impending danger in which appellee was placed. Under the facts disclosed by the answers to interrogatories, he had no right to assume that the buggy in which appellee was riding would get off the track and leave an unobstructed passageway for the car. Some of the answers to the interrogatories are mere conclusions, but this does not destroy their force or efficacy. Eliminating such conclusions, the material facts found are, it seems to us, in perfect harmony with the general verdict. These facts disclose two propositions which are of controlling influence in the decision of this case: (1) That appellant's servants were negligent in failing to stop the car and thus avoid the accident; and (2) that appellee's acts were

not the proximate cause of her injury, and hence contributory negligence can not be attributed to her."

In *Hammond; etc., R. Co.* v. *Eads* (1904), 32 Ind. App. 249, the doctrine was reiterated and applied to a motorman who saw, or ought to have seen by the exercise of reasonable care, that the plaintiff's horse had become unmanageable. The doctrine has been expressed and applied in the following cases: *Terre Haute Electric R. Co.* v. *Yant* (1899), 21 Ind. App. 486, 69 Am. St. 376; *Citizens St. R. Co.* v. *Lowe* (1895), 12 Ind. App. 47; *Muncie St. R. Co.* v. *Maynard* (1892), 5 Ind. App. 372; *DeLon* v. *Kokomo City St. R. Co.* (1899), 22 Ind. App. 377.

13. If it be reasonably apparent that one person is in a place of danger; that he is unconscious of his danger, and likely to remain in said place, or is unable to escape, no man possessing the slightest humanity will assert that he may be carelessly maimed or killed, without legal responsibility on the part of the one who, seeing the situation, is willing thus to act.

As has been forcefully said in the argument of this case: "It is remarkable indeed that any humane and enlightened judge should ever have supposed that any person might run down and injure or kill a human being in a position of obvious peril and unconscious of danger merely because he had been negligent in placing himself in such position." The facts in the following cases, decided by the courts of other states, are closely analogous to those here involved. Many others might be added to them. *Vincent* v. *Norton, etc., St. R. Co.* (1901), 180 Mass. 104, 61 N. E. 822; *Montgomery* v. *Lansing City, etc., R. Co.* (1894), 103 Mich. 46, 61 N. W. 543, 29 L. R. A. 287; *Redford* v. *Spokane St. R. Co.* (1896), 15 Wash. 419, 46 Pac. 650; *Orr* v. *Cedar Rapids, etc., R. Co.* (1895), 94 Iowa 423, 62 N. W. 851; *Baltimore, etc., R. Co.* v. *Cooney* (1898), 87 Md. 261, 39 Atl. 859; *North Baltimore, etc., R. Co.* v. *Arn-*

*reich* (1894), 78 Md. 589, 28 Atl. 809; *Little* v. *Boston, etc., Railroad* (1903), 72 N. H. 61, 55 Atl. 190; *St. Louis, etc., R. Co.* v. *Jacobson* (1902), 28 Tex. Civ. App. 150, 66 S. W. 1111; *Memphis, etc., R. Co.* v. *Martin* (1901), 131 Ala. 269, 30 South. 827; *Tully* v. *Philadelphia, etc., R. Co.* (1900), 2 Pennewill (Del.) 537, 47 Atl. 1019, 82 Am. St. 425; *Kolb* v. *St. Louis Transit Co.* (1903), 102 Mo. App. 143, 76 S. W. 1050; monographic note, "The last clear chance," *Bogan* v. *Carolina Cent. R. Co.* (1901), 55 L. R. A. 418.

Judgment affirmed.

COMSTOCK, J.—Appellee, in my opinion, was clearly guilty of negligence. I concur in the result only upon the ground that after appellee's negligence and imperiled position was known or should have been known to appellant, the car might have been controlled, by the exercise of reasonable care, so as to have avoided the injury.

## ON PETITION FOR REHEARING.

ROBY, J.—14. Appellant, in support of its petition for a rehearing, says: "We undertake to say that the authorities are unanimous, explicit and emphatic upon the proposition that, before any man can be held liable to another who has negligently placed himself in a position of peril, the first party must actually know not only that the person is in a position of peril, but that he will remain so."

15. If the charge were one of wilful injury, the proposition stated would be more nearly correct. The authorities cited are cases where persons have been injured while upon the tracks of steam railroads, by locomotive engines, and cars propelled by such engines.

16. The duty owed by a corporation operating a steam railroad to footmen walking along or across its tracks is widely different from the duty owed by a street car company to travelers upon the city streets. The railroad company

is under no obligation to exercise active vigilance as to such trespassers. It is under the duty of refraining from the infliction of wilful injury upon them. *Dull* v. *Cleveland, etc., R. Co.* (1899), 21 Ind. App. 571.

17. The doctrine which appellant asserts has no application to railroads laid in the street, to the use of which the public are entitled in common with the company, it consequently being bound to anticipate the rightful presence of men, women and children on its tracks and in front of its cars. The application of such doctrine to cases like the one at bar would result in releasing the street car company from the duty of keeping a constant lookout; a duty which the law demands of corporations which have received licenses to propel their cars at a high rate of speed along the surface of the highway in populous districts where the public must of necessity pass and repass. To apply it thus would be to ignore the patent fact that the car company, and not the foot-passenger or driver, propels the vehicle which constitutes the instrument of danger, because of which the duty devolves upon it to exercise constant care and watchfulness to avert injury to the other members of the public who also use the highway. If this doctrine is sound, the company would be exonerated, although its motorman looks constantly to the rear, or even goes forward with his eyes shut. 2 Thompson, Negligence (2d ed.), §1476; 1 Shearman & Redfield, Negligence (5th ed.), §99.

There was evidence in the case at bar from which the jury might find that appellant, by the exercise of reasonable care after its motorman discovered appellee, or after he should have been discovered by the exercise of reasonable diligence, could have averted the collision and avoided injury. The general verdict therefore carries with it a finding of such facts. They require an affirmance of the judgment.

The petition for rehearing is overruled.